Commonwealth of Pennsylvania and William H. Wilcox, Chairman, Governor's Council of State Agencies for Flood Recovery in the Wyoming Valley, Plantiffs, *v.* Richard Chesney, A & B Wiper Supply, Inc., P. H. Berman, Inc. and Dipcom, Inc., Defendants.

380

Argued December 4, 1973, before Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. President Judge BOWMAN did not participate.

*Michael Minkin*, Assistant Attorney General, with him *Robert S. Kravitz*, Assistant Attorney General, *James W. Sutton, Jr.*, Assistant Attorney General, *Hermann Rosenberger, II*, Assistant Attorney General, and *Dante Mattioni*, Deputy Attorney General, for plaintiffs.

*Michael I. Luber*, with him *Stanton Dubin* and *Ettinger, Poserina, Silverman, Dubin, Anapol & Sagot*, for defendants.

OPINION BY JUDGE WILKINSON, January 8, 1974:

This is an action brought before us in our original jurisdiction, wherein the Commonwealth seeks: to obtain an accounting from the defendants for certain towels "seized" by them from the Scranton-Wilkes-Barre Airport or any other flood relief center and for the funds received from their sale; to have defendants

declared "trustees for the flood victims" for the towels in their possession, and "for the reasonable or fair market value" of those previously sold; and to have defendants ordered to pay over to the Pennsylvania Emergency Relief Fund, or other suitable charity, any sum to be due, and to deliver the remaining towels.

The complaint, very briefly summarized, alleges that a donor delivered on June 29, 1972, a quantity of towels to the flood relief center at the Scranton-Wilkes-Barre Airport for use by flood victims for clean-up operations in the aftermath of the June-July, 1972 flood. The fair market value of the towels is alleged to be $15,000.00. It is alleged that on or about July 12 to July 14, 1972, the defendants took the towels from the Airport and subsequently disposed of the towels to their personal advantage.

The three critical paragraphs of the complaint here involved are:

"16. Mr. Chesney, A & B [Wiper Supply, Inc.], PHB[erman, Inc.], and DC [Dipcom, Inc.] knew or should have known that the Tracel Shop Towels taken had been donated for the use, benefit and enjoyment of the flood tragedy's victims.

"17. The taking of the shop towels as aforesaid was accomplished without the knowledge, consent or authority of either an individual or group competent to give the same.

"18. Insofar as the aforesaid taking was authorized, such consent was procured by fraud and/or was predicated on the assumption that the said towels would be used by Chesney, A & B, PHB and DC for the purposes of flood relief."

An answer was filed by the defendants, Richard Chesney, A & B Wiper Supply, Inc. and P. H. Berman, Inc. Again, briefly summarized, the answer admits obtaining the towels but alleges they were removed by de-

382

fendants at the request of the flood relief officials. As to the above quoted paragraphs, the answer alleges:

"16. Denied. It is denied that answering defendants knew or should have known that the said shop towels had been donated for the use and benefit of flood victims. On the contrary, it is averred that at all times material herein, defendants had no knowledge of the manufacture or origin of said towels. It is further averred that until the arrival of said shop towels at defendants' place of business, defendants were without personal knowledge as to the type of said towels, the packaging of said towels, the quality of said towels, and the condition of said towels.

"17. Denied. It is denied that the taking of said shop towels was accomplished without the knowledge, consent or authority of an individual or group of individuals competent to give such consent or authority. On the contrary, it is averred that the removal of the said shop towels from the area in, on or about the Wilkes-Barre Airport by the answering defendants was accomplished with the knowledge and express consent, authority and assistance of that person or persons engaged in Flood Relief activities who were authorized to give such consent and authority.

"18. Denied. It is denied that in so far as the removal of the towels by defendants was authorized, that such consent was procured by fraud and/or predicated on the assumption that the said towels would be used by answering defendants for the purpose of Flood Relief. On the contrary it is averred that the consent and authority given to the answering defendants to remove said shop towels was with full knowledge and consent by the said Flood Relief Authorities that the answering defendants were removing said towels for their own commercial purposes and not for purposes of Flood Relief; it is further averred that answering defendants were advised by the said Flood Relief authorities that

in the event the said towels were not removed by answering defendants the shop towels would forthwith thereafter be sent to a certain local dumping area for disposition and destruction."

Subsequently, defendant Dipcom, Inc. filed a separate answer alleging as to these three paragraphs:

"16. Denied. Defendant denies that it knew or should have known that said towels had been taken as alleged, or that they had been donated for the use, benefit and enjoyment of flood victims. Defendant further alleges that at no time were any statements made to Defendant or any facts brought to its attention which would in any manner even suggest that said towels were taken and/or to be used as aforesaid.

"17. Denied. It is specifically denied that Defendant at any time took any of said towels or was in any manner whatsoever involved directly or indirectly or had any knowledge of said taking. Otherwise Defendant is without knowledge or information sufficient to form a belief as to the truth of the averment, and therefore same is denied and proof thereof is demanded.

"18. Denied. It is specifically denied that Defendant at any time took any of said towels or was in any manner whatsoever involved directly or indirectly or had any knowledge of said taking. Otherwise Defendant is without knowledge or information sufficient to form a belief as to the truth of the averment, and therefore same is denied and proof thereof is demanded."

The answer of Dipcom contained new matter to which the Commonwealth filed a reply, denying sufficient knowledge to make denials and demanding proof.

Following the above pleadings, the Commonwealth filed a motion for summary judgment pursuant to Rules 1501 and 1035 of the Pennsylvania Rules of Civil Procedure, stating that "there is no material issue of fact."

The argument of the Commonwealth that a trust must be impressed on these towels may be persuasive

if the facts are as alleged in the complaint, but certainly there are substantial disputes of fact at the very core of the case.

Judge, now President Judge, WATKINS, speaking for the Superior Court, in *Prince v. Pavoni*, 225 Pa. Superior Ct. 286, 288, 302 A. 2d 452, 454 (1973), reversed the lower court which had entered a summary judgment, accurately stating the law as follows:

"It is well settled and beyond reasonable dispute that such a severe dispository procedure should not be granted except in the 'clearest' of cases where there is not the least doubt as to the absence of a triable issue of material fact. . . . (citations omitted)

"The burden of proving the absence of any genuine issue of fact is on the moving party and all doubt in reference thereto must be resolved against that moving party. Schacter v. Albert, 212 Pa. Superior Ct. 58, 239 A. 2d 841 (1968).

"The burden of the non-moving party where summary judgment is requested is not the same as the burden during a trial of the issues, it need only be shown that there is a genuine issue as to any material fact."

Accordingly, we enter the following

### ORDER

Now, January 8, 1974, plaintiffs' motion for summary judgment is dismissed.