464 A.2d 431

**FIREMAN'S FUND INSURANCE COMPANY, Appellant,**

**v.**

**NATIONWIDE MUTUAL INSURANCE COMPANY and Ernest Clark.**

Superior Court of Pennsylvania.

Argued May 4, 1982.

Filed Aug. 5, 1983.

498

500

Michael D. Gallagher, Philadelphia, for appellant.

James C. Haggerty, Philadelphia, for appellees.

Before SPAETH, ROWLEY and CIRILLO, JJ.

ROWLEY, Judge:

This is an appeal from an order of the trial court granting summary judgment in favor of Nationwide Mutual Insurance Company (hereinafter "Nationwide" or "appellee") and against Fireman's Fund Insurance Company (hereinafter "Fireman's" or "appellant"). For the reasons set forth more fully below, we reverse.

On September 23, 1977, Ernest Clark, then 22 years of age, was involved in a single car motor vehicle accident while riding as a passenger in a car owned and operated by one Ward Ellison. The accident rendered Ernest Clark a quadriplegic. Clark neither owned an automobile nor was he the named insured in any policy of automobile insurance at the time of the accident. However, Ernest's father, Leroy Clark, was the named insured in a policy of automobile insurance issued by Appellant Fireman's. This policy's

coverage applied to two motor vehicles owned by Leroy Clark. Moreover, living in the same household with the other two Clarks was William Clark, Ernest's brother. William Clark was the named insured in a policy of automobile insurance issued by Appellee Nationwide. This policy applied to the single motor vehicle owned by William Clark.

Ernest Clark first asserted his claim for basic loss benefits against Fireman's as if that insurer were wholly responsible for the payment of those benefits in accordance with § 204(b) of the No-Fault Act, Act of July 19, 1974, P.L. 489, No. 176, Art. II, Sec. 204(b), 40 P.S. § 1009.204(b). Fireman's paid the claim and then demanded contribution pro rata from Nationwide for one-half of the total claim. It made this demand based upon the number of involved obligors, in this instance two, and the principle that each should bear the burden equally. Nationwide resisted, paying instead only one-third of the claim as reimbursement to Fireman's, basing this apportionment of liability on the number of insured vehicles and the difference in premiums paid to obtain coverage for them.

■ This difference in interpretation as to their responsibility under § 204(b) of the No-Fault Act led Fireman's to file a petition on June 2, 1980, seeking a declaratory judgment in its favor pursuant to the Declaratory Judgments Act, Act of July 9, 1976, P.L. 586, No. 142, Sec. 2, 42 Pa.C.S.A. § 7531 et seq. On February 13, 1981, Fireman's filed a motion for summary judgment. By an order dated September 18, 1981, the Honorable Edward Rosenwald denied the motion and held that Fireman's was entitled to receive reimbursement for only one-third of the benefits it paid to Ernest Clark.[1] Fireman's then filed a notice of

1. Neither party has objected to this procedure and we intimate no view as to its propriety. We note, however, that while neither this court nor the Pennsylvania Supreme Court has decided whether summary judgment is appropriate in a declaratory judgment action, the Commonwealth Court has decided the issue in the affirmative. *See: Pennsylvania Public Utility Commission Bar Association v. Thornburgh,* 62 Pa.Cmwlth. 88, 434 A.2d 1327 (1981); *Laspino v. Rizzo,* 40 Pa.Cmwlth. 625, 398 A.2d 1069 (1979); *Commonwealth of Pennsylva-*

appeal to this court. At that time, the trial court's docket indicated only that the motion for summary judgment was denied. It is clear that such an order is not appealable. *Husak v. Berkel, Inc.*, 234 Pa.Super. 452, 341 A.2d 174 (1975); *Sultan v. Sentry Insurance Co.*, 220 Pa.Super. 372, 283 A.2d 869 (1971). Thereafter, on July 15, 1982, pursuant to Pa.R.A.P. No. 301 summary judgment in favor of Nationwide was entered and it was docketed on August 2, 1982. With the appeal now properly before us, we proceed to consider the issues on the merits.

■■■ Appellant's action is brought under § 204(b) of the Act "to recover contribution pro rata" from appellee for basic loss benefits paid to Ernest Clark. It is necessary, therefore, that we first construe the language of that provision. When interpreting a statute, our first step is to "ascertain and effectuate the intention of the General Assembly," giving full effect to each provision of the statute if at all possible. 1 Pa.C.S.A. §§ 1921(a), 1922(2). *See also Allstate Ins. Co. v. Heffner*, 491 Pa. 447, 421 A.2d 629 (1980). The General Assembly is presumed not to have intended a result which is absurd or unreasonable. 1 Pa.C.S.A. § 1922(3). The words and phrases used in any legislation are to be construed "according to their common meaning and accepted usage," with technical words being given their technical meaning. *Id.* § 1903(a). With these principles in mind, it is appropriate to examine the pertinent statutory language.

Section 204 of the Act provides:

§ 204 Source of basic restoration benefits

(a) *Applicable security.*—The security for the payment of basic loss benefits to an injury to:

*nia v. Frantz Advertising, Inc.*, 23 Pa.Cmwlth. 526, 353 A.2d 492 (1978); *Commonwealth of Pennsylvania v. Chesney*, 11 Pa.Cmwlth. 379, 315 A.2d 675 (1974). We also note that summary judgment may be entered in favor of the non-moving party and against the moving party. *See: Port Authority of Allegheny County v. Flaherty*, 6 Pa. Cmwlth. 135, 293 A.2d 152 (1972); 2 Goodrich-Amram 2d, § 1035(b)(6), 2B Anderson Pennsylvania Civil Practice, § 1034.24(b).

(1) an employee, or to the spouse or other relative of any employee residing in the same household as the employee, if the accident resulting in injury occurs while the victim or deceased victim is driving or occupying a motor vehicle furnished by such employee's employer, is the security for the payment of basic loss benefits covering such motor vehicle or, if none, any other security applicable to such victim;

(2) an insured is the security under which the victim or deceased victim is insured;

(3) the driver or other occupant of a motor vehicle involved in an accident resulting in injury who is not an insured is the security covering such vehicle;

(4) an individual who is not an insured or the driver or other occupant of a motor vehicle involved in an accident resulting in injury is the security covering any motor vehicle involved in such accident. For purposes of this paragraph, a parked and unoccupied motor vehicle is not a motor vehicle involved in an accident, unless it was parked so as to cause unreasonable risk of injury; and

(5) any other individual is the applicable assigned claims plan.

(b) Multiple sources of equal property.—If two or more *obligations to pay* basic loss benefits *apply equally to an injury under the priorities set forth in subsection (a)* of this section, the obligor against whom a claim is asserted first shall process and pay the claim as if wholly responsible. Such obligor is thereafter entitled to recover *contribution pro rata* from any other such obligor for the basic loss benefits paid and for the costs of processing the claim. If contribution is sought among obligors responsible under paragraph (4) of subsection (a) of this section proration shall be based on the number of involved motor vehicles. (Emphasis supplied.)

None of the operative language contained in subsection (b) has been explicitly defined by the legislature. However, each insurer agrees that it has an "obligation to pay." In

accordance with § 111(b) of the No-Fault Act, each company has "provid[ed] security for the payment of basic loss benefits" to Ernest Clark who qualifies as an insured under each policy.[2]

Moreover, there is no dispute that these two insurers' obligations to pay "apply equally ... under the priorities" contained in subsection (a). That subsection describes the source of "applicable security" for the payment of benefits. It establishes a system of priorities between obligors in terms of the factual situation in which the claimant's injury took place. Unless a victim brings himself or herself within the fact pattern set forth in the first priority, he or she must move on to the subsequent priorities until the proper "source" from which to claim the basic loss benefits is ascertained. In the case before us, only one priority applies, namely § 204(a)(2) and it applies to the policy issued by each carrier. The obligations of Fireman's Fund and Nationwide to pay basic loss benefits to Ernest Clark thus arise under the identical priority provision of § 204(a). Furthermore, in the absence of either policy, the other insurer would be required to assume the entire burden of providing basic loss benefits to Ernest Clark. Finally, there is no claim that either of these policies provides only some type of limited coverage to be utilized only when other collectible insurance is exhausted, whether that coverage be "secondary," "excess," "umbrella," or of some other form. Because the obligations of these insurers arise under the same level of priority, because both of these policies provide the

---

**2.** Under § 103 of the No-Fault Act, 40 P.S. § 1009.103, insurers such as Fireman's Fund and Nationwide must write their contracts of insurance to cover:

[R]elative[s] of a named insured, a minor in the custody of a named insured, and a minor in the custody of a relative of a named insured if—

(i) not identified by name as an insured in any other contract of basic restoration insurance complying with this act; and

(ii) in residence in the same household with a named insured. An individual is in residence in the same household if he usually makes his home in the same family unit ....

There is no dispute that Ernest Clark is a relative of both his father and brother and that he is usually "in residence" in a "family unit" with both of them.

same type of insurance coverage and because there is no logical method by which we may call upon one insurer to fulfill its contractual obligation to make the required benefits payments up to the limits of its policy before requiring the other insurer to do the same, the obligations of each of the parties to pay basic loss benefits is deemed to "apply equally." So much, apparently, is neither contested nor contradicted.

The parties do differ, however, when giving content to the statutory direction contained in § 204(b) that, when two or more obligations to pay such benefits are equally applicable, "the obligor against whom a claim is asserted first ... is thereafter entitled to recover *contribution pro rata* from any other such obligor ...." (Emphasis supplied.) On the one hand, Nationwide argues that it is "inequitable" for Fireman's to receive two premiums and yet to be required to pay the same share of benefits as Nationwide which received but one. Fireman's, on the other hand, argues that proration should be made on the basis of the number of involved obligors, regardless of the amount of premiums obtained. The trial court held that Nationwide was correct and apportioned the liability one-third to Nationwide and two-thirds to Fireman's. The term "contribution pro rata" has not been defined by the General Assembly. However, that term has an accepted and technical meaning in the insurance industry and in insurance law. It is appropriate, therefore, to look to the meaning ascribed to such terms.

### I. Premium Method of Proration

Three basic methods of proration have been identified. There are three basic methods of proration. The majority rule ... prorates liability according to the limits contained in each policy. The next, which is seldom followed, prorates on the basis of the premiums paid to each insurer. Finally, there is a minority but growing number of courts which prorate the loss equally up to the limits of the lower policy....

*Carriers Insurance Co. v. American Policyholders Ins. Co.,* 404 A.2d 216, 221 (Me.1979).

*See also:* 7A Am.Jur.2d, Automobile Insurance §§ 432 et seq.; 16 Couch on Insurance 2d, Chapter 62, "Contribution and Apportionment."

Because the method of proration adopted by the trial court in this case and urged upon us by Nationwide is founded on an assumed difference in the amount of *premiums* received by each obligor, it seems appropriate to analyze the so-called premium method of proration. One case in which the premium method of proration was utilized is *Insurance Company of Texas v. Employers Liability Assurance Corp.,* 163 F.Supp. 143 (S.D.Cal.1958). At the time that case was decided, California followed (and still does) the majority rule of policy-limits apportionment. In that case, however, one insurer had issued a policy with limits far in excess of those contained in a rather small second policy covering the same risk. The loss sustained was small enough to be within the limits of the smaller policy. Had the court followed the policy-limits formula, the issuer of the larger of the two policies would have been required to pay for almost the entire loss. The court recognized that once minimum insurance coverage is established, large increases in the limits of coverage may be added at relatively low cost. The court implicitly recognized that requiring the larger-limit insurer to pay for the entire loss would not begin to approximate either the actual contractual obligation undertaken by the insurers or the benefits received by the insurers. The court thus found it more "equitable" to require the insurers to prorate the loss based upon the ratio of their respective premiums in relation to the entire amount of premiums paid. *Id.* at 147. The court intimated that in almost all other circumstances, it would have applied the majority rule.

Premium-based proration has been subjected to extensive criticism in courts at both the Federal and State levels. *Mission Insurance Co. v. Allendale Mutual Insurance Co.,* 95 Wash.2d 464, 626 P.2d 505 (1981); *Carriers Insur-*

ance Co. v. American Policyholders' Ins. Co., supra; Ryder Truck Rental, Inc. v. Schapiro & Whitehouse, Inc., 259 Md. 354, 269 A.2d 826 (1970); State Farm Mutual Automobile Insurance Co. v. Travelers Indemnity Co., 433 F.2d 311 (10th Cir.1970); State Farm Mutual Automobile Ins. Co. v. General Mutual Ins. Co., 282 Ala. 212, 210 So.2d 688 (1968); Ruan Transport Corporation v. Truck Rentals, Inc., 278 F.Supp. 692 (D.Colo.1968); Continental Casualty Co. v. Travelers Insurance Co., 84 Ill.App.2d 200, 228 N.E.2d 141 (1967); Nationwide Mutual Insurance Co. v. State Farm Mutual Automobile Ins. Co., 209 F.Supp. 83 (N.D.W.Va.1962); Cosmopolitan Mutual Insurance Co. v. Continental Casualty Co., 28 N.J. 554, 147 A.2d 529 (1959). See also: Concurrent Coverage in Automobile Liability Insurance, 65 Columbia L.R. 319, 330–331 (1965). The fundamental defect in this approach to proration is that included in a given premium are a multitude of "sub-premiums" intended to pay for each of the many risks covered by the policy. Unless the risks covered by each policy are identical and the premiums assessed in the identical manner, it is difficult if not impossible to untangle the premiums paid and ascertain exactly how much is paid to cover any one risk. If, because it is too complicated, this unscrambling is not done, apportioning liability on the basis of the premiums comports with neither the obligation undertaken by the obligor nor the benefit received by it in exchange for providing insurance coverage. Liability thus ceases to bear any relationship to the contract and, instead, has only facile application to recommend it.

■ This criticism may be applied in the instant case. Ernest Clark is an insured under the single policy of insurance issued by Fireman's to Leroy Clark, Ernest's father. Nationwide argues that Fireman's received "two personal injury premiums." However, there is nothing in the record before us which indicates that Fireman's received a greater amount of money than did Nationwide to cover the risk involved in this case, i.e. the risk of bodily injury to Ernest Clark while riding in the car of a third party. The bulk

of any additional premium payments made to Fireman's for the coverage provided for the second car listed on the policy was presumably for the purpose of providing benefits when covered persons were injured while riding in *that* car. Unless and until there is a showing that Fireman's did, in fact, receive twice the amount in premiums for the risk involved in providing coverage to Ernest Clark, *under the facts of this case,* apportioning liability on the basis of premiums would impose upon Fireman's an obligation to pay benefits in excess of any demonstrated proportionate benefit Fireman's received. Additionally, even if Fireman's did receive a higher premium, the additional money was collected by Fireman's in anticipation of being required to pay out basic loss benefits twice as often because of having two insured cars on the road instead of one. The fact that more premiums are received does not provide an appropriate basis for requiring each payment for loss to be twice as large. Moreover, the risk that Ernest would be injured in a car operated by a third party is exactly the same with regard to both policies. Because all things appear to be equal with regard to this accident, this victim and these insurers, there is no basis in the record for imposing *unequal* burdens on the carriers.

Another difficulty with utilizing a method of proration in this case that is based on a difference in premiums received is that the record does not disclose what difference, if any, there is in the premiums actually received by each of the obligors for the personal injury protection (PIP) benefits provided for the claimant under each policy. Nationwide's policy is not included in the reproduced record and there is no evidence concerning the amount of coverage provided or premium received for work loss or replacement services loss.[3] Although Fireman's policy is included in the repro-

---

**3.** Under the No-Fault Act, no limit may be placed upon the medical expenses for which an insurer must reimburse an automobile accident victim. 40 P.S. §§ 1009.103, 1009.201 and 1009.202(a). Furthermore, under the Act, each policy must provide for minimum amounts of work loss and replacement services loss. *Id.* § 1009.202(b) and (c). We are uninformed whether the policy issued by Nationwide exceeds

duced record, it does not include the PIP endorsement. However, it appears from the "Declarations" sheet that "Statutory" protection is provided. Unfortunately, the amount of premium charged is undecipherable. Thus, the crucial finding that Fireman's collected two premiums to Nationwide's one is not supported by the record before us and, at the very least, summary judgment on this point is inappropriate.

 Moreover, Fireman's presents a cogent argument based on the maxim "inclusio unius est exclusio alterius". The last sentence of § 204(b) specifically states that the "number of involved motor vehicles" is the method of proration to be used, but only when the injury occurs under the priority established by § 204(a)(*4*). That priority applies when an *uninsured* individual is injured while not occupying a motor vehicle as either driver or passenger. It is apparent, therefore, that the legislature knew of the availability of this method of proration and consciously limited its use to only one of the five factual situations contained in subsection (a). Because the legislature failed to impose this system of proration across the board, it is apparent that some other system of proration was intended by the legislature to apply to cases coming within the scope of § 204(a)(2). We conclude that it is impossible to determine the meaning of "contribution pro rata" by reference to the statute alone and that its meaning should not be determined by referring to terms which *could* have been written into the statute but were not. Therefore, we hold that in calculating the amount of an obligor's liability for contribution pro rata under § 204(a)(2) and (b) of the Act neither the so-called "premium method" nor the "involved motor vehicles" method shall be utilized.

## II. Policy-Limits Method of Proration

Resolution of this case depends, rather, upon the language of the policies in question and an examination of the

these minimums; the policy issued by Fireman's apparently does not. (Repro.Record, 7a.)

law of insurance prior to the enactment of the No-Fault Act and the effect, if any, passage of that Act may have had upon that law. In *Vrabel v. Scholler*, 369 Pa. 235, 242–243, 85 A.2d 858, 861 (1952) (*Vrabel I* ), appeal after remand, 372 Pa. 578, 94 A.2d 748 (1953) (*Vrabel II* ), the Pennsylvania Supreme Court stated:

> In the absence of contrary modifying provisions in a statute, the liability of an insurer and the extent of the loss under a policy of automobile liability insurance must be determined, measured, and limited *by the terms of the contract.* (Emphasis supplied.)

Where the insurance policies did not themselves expressly specify the method of proration, the Supreme Court held that liability was to be apportioned under the so-called majority rule or the "policy limits" method of proration. *Compare Vrabel II, supra,* with *Carriers Ins. Co. v. American Policyholders' Ins. Co.,* 404 A.2d at 221–222.

■ In the case before us, Fireman's and Nationwide have both argued for a decision based solely on a construction of the statute. However, there is no indication in either the Act itself nor the legislative history that either insurer is correct in its interpretation of the Act. As noted above, the Act itself contains no definition of either "contribution" or "pro rata." At least on its face, therefore, § 204(b) of the No-Fault Act is not in this regard a "contrary modifying provision[ ] in a statute" within the meaning of *Vrabel I.* Moreover, the legislative history of the Act contains no reference to § 204(b). *See* D. Shrager, ed., *The Pennsylvania No-Fault Motor Vehicle Insurance Act* (1979), Appendix B. "Legislative History," 311–501. Likewise, although proposed Federal no-fault legislation contained an almost identical provision, S. 354, 93d Cong., 2d Sess. § 205(b), contained in Shrager, *Pennsylvania No-Fault Act, supra,* Appendix C, at 536, the legislative history of the proposed Federal statute is also barren of any enlightening explanation of the proration system envisioned. *See National No-Fault Motor Vehicle Insurance Act: Report of the Senate Committee on Commerce on S.*

*354*, S.Rep. 382, 93d Cong., 1st Sess. (1973) at p. 65; *No-Fault Insurance: Hearings on S. 354 Before the Senate Committee on the Judiciary*, 93d Cong., 1st and 2d Sess. (1973–1974). Similar or identical language contained in other bills proposed in Congress which could have served as a guide to the General Assembly also received no meaningful comment or explanation. *See e.g., No-Fault Motor Vehicle Insurance: Hearings on H.Coon.Res. 16, H.R. 10, H.R. 1400, H.R. 1680, H.R. 2162, H.R. 13714, H.R. 15789, and S. 354 (and identical bills) Before the Subcommittee on Commerce and Finance of the House Committee on Interstate and Foreign Commerce*, 93d Cong., 2d Sess. (1974); *See also Automobile Insurance Reform and Cost Savings: Hearings on S. 945, S. 946, S. 976, and S.Con. Res. 23 Before the Senate Committee on Commerce (Parts I–V)*, 92d Cong., 1st Sess. (1971). Because there is no *evident* intent on the part of the General Assembly to alter the law prevailing at the time the No-Fault Act was passed, we conclude that the legislature's use of current accepted and technical insurance vocabulary indicates that the General Assembly was informed with regard to the law with respect to proration and it determined that that facet of the law was not to be changed. It is our conclusion, therefore, that the No-Fault Act is not such a "modifying statute" as that spoken of in *Vrabel I*.

■ Because the statute does not compel the use of any particular method of proration, we should look to the contracts of insurance to determine if the parties have allocated the burden of proration therein. The policy issued by Fireman's states in pertinent part:

If there is other automobile medical payments insurance ... the Company [Fireman's] shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible automobile medical payments insurance.

(Repro. Record, 15a, "Conditions: 16. Other Insurance, Part II.")

While the limit of liability stated in the declaration will be required to yield to contrary modifying provisions in the No-Fault Act,[4] the model Basic Personal Injury Protection Endorsement, Section I: Condition H, promulgated by the Commissioner of Insurance at 31 Pa.Code § 66.102(e), specifically shows that a clause such as the one quoted above is still deemed appropriate. The model pro rata clause states:

> In no case shall the Company be liable for a greater proportion of any loss than this policy's limit of liability bears to the sum of all limits of liability of all applicable insurance and self-insurance.

■ We are not informed, however, of the pertinent language contained in the policy issued by Nationwide or in the PIP endorsement to Fireman's policy. It may be that both policies contain language similar to that in the model clause prescribed by the Commissioner. If so, that language should be followed. If there is a conflict between the language of the policies, that conflict should first be resolved in the trial court by reference to the language contained in the policies. If the clauses are irreconcilable, they should be disregarded as mutually repugnant and the common law rule of *Vrabel I* and *Vrabel II* applied, i.e. the policy-limits ratio. If that common law rule is to be altered, it should be done only after careful consideration and reflection, with due regard for the uniformity, coherence, simplicity and certainty of the No-Fault system of insurance desired by the legislature. *See, e.g., Mission Insurance Co. v. Allendale Mutual Insurance Co., supra; Carriers Insurance Co. v. American Policyholders' Ins. Co., supra; Ryder Truck Rental, Inc. v. Schapiro & Whitehouse, Inc., supra; State Farm Mutual Automobile Insurance Co. v. Travelers Indemnity Co., supra; Ruan Transport Corporation v. Truck Rentals, Inc., supra; Continental Casualty Co. v. Travelers Insurance Co., supra; Nationwide Mutual Insurance Co. v. State Farm Mutual Automobile Ins. Co., supra;* and *Cosmopolitan Mutual Ins. Co. v. Continental Casualty Co., supra.*

**4.** *See, supra,* n. 2.

In any event, this case is not yet ripe for summary judgment because there is as yet no showing that either party "is entitled to a judgment as a matter of law." Pa.R.C.P. 1035. We therefore reverse the order of the trial court granting summary judgment in favor of Appellee Nationwide and remand this case for further proceedings not inconsistent with this opinion.

Jurisdiction is not retained.