471 A.2d 86

Helen V. WRIGHT, Administratrix of the Estate of James D. Wright, Deceased

v.

NATIONAL GRANGE MUTUAL INSURANCE COMPANY and Fireman's Fund Insurance Company, Appellant.

Superior Court of Pennsylvania.

Argued April 21, 1983.

Filed Jan. 20, 1984.

560

James M. Marsh, Philadelphia, for National Grange, appellant.

Michael Saltzburg, Philadelphia, for Fireman's Fund, appellant.

Mayer Horwitz, Philadelphia, for appellee.

Before WICKERSHAM, ROWLEY and WATKINS, JJ.

ROWLEY, Judge:

This is an appeal from the entry of judgment in favor of appellee, Helen V. Wright, Administratrix of the Estate of James D. Wright, Deceased, and against the appellants, National Grange Mutual Insurance Company and Fireman's Fund Insurance Company. For the reasons set forth more fully below, we reverse in part and remand for further proceedings.

The facts are undisputed. On December 29, 1978, James D. Wright, a pedestrian, was injured in an automobile accident. He died twelve days later. At the time of his death, James was not the named insured under any policy of no-fault automobile insurance. However, James lived with his mother, Helen V. Wright, who owned a single automobile insured under a policy of insurance issued by Fireman's Fund. Gerald Wright, James' brother, also lived in the same household with James and their mother. Gerald owned a single automobile insured under a policy issued by National Grange. Helen V. Wright, as James' personal representative, made a demand for the full payment of no-fault benefits from each insurer. The insurers admitted that James was an insured under their respective policies, *see* 40 P.S. § 1009.103 ("Insured"), and also admitted that they were "jointly and severally liable" to appellee in her representative capacity for (1) survivor's loss benefits in the total amount of $5,000.00, (2) work loss benefits in the total amount of $15,000.00 as that loss accrues, and (3) funeral expenses in the total amount of $1,500.00. *See* 40 P.S. §§ 1009.103 and 1009.202. The insurers denied any further liability.

Appellee then instituted this suit by filing a complaint in assumpsit on December 17, 1980. Appellee asserted that she was entitled to a judgment against the insurers in the amount of $10,000.00 for survivor's benefits, $30,000.00 for work loss benefits and $1,500.00 in funeral benefits as well as counsel fees, costs and interest at the rate of 18% per year. In their answers, the insurers admitted the underlying facts and their liability but denied that they were obligated to provide any benefits in an amount greater than the limits specified in one of the two applicable policies. Appellee then filed a motion for summary judgment.

The parties submitted two issues to the trial court for its determination. The first was whether or not appellee was entitled to "stack" the benefits provided in each insurance policy so as to permit her to claim the amounts set forth in her complaint and her motion. The second issue was whether the insurers should pay work loss benefits in a lump sum or be permitted to pay out work loss benefits as the economic detriment accrued. The trial court found in favor of appellee on both issues and, in an order entered November 9, 1981, the court granted her motion for summary judgment in the amounts set forth above. The insurers sought and were granted reconsideration of this order pursuant to Pa.R.A.P. 1701. On December 9, 1981, the trial court again granted appellee's motion for summary judgment, this time reducing the amount of the judgment by the amount of the benefits already paid by the insurers. Judgment was entered against National Grange and Fireman's Fund jointly and severally, in the amount of $5,000.00 for survivor's benefits, $17,703.26 for work loss benefits, $1,500.00 for funeral expenses, and interest at the rate of 18% per annum, from September 22, 1980. The trial court also awarded appellee $1,000.00 for counsel fees. The insurers thereafter, on December 30, 1981, filed a notice of appeal to this court.

Our Court sitting *en banc* has recently decided that a provision in a policy providing the coverage required by the No-Fault Act violates neither that Act nor public policy by

prohibiting the "stacking" of no-fault basic loss benefits. *Antanovich v. Allstate Insurance Company*, 320 Pa.Super. 322, 467 A.2d 345 (1983). In *Antanovich*, more than one car was insured under a single policy of insurance issued by a single insurer. In the case before us, there are two separate insurance policies, issued by different insurers, under each of which the decedent was an "insured". While the facts of this case are thus somewhat different than those which confronted the court in *Antanovich*, we are of the opinion that such a difference does not require a departure from the holding in that case. President Judge Spaeth's discussion of the General Assembly's intent, the public policy of this Commonwealth and the construction of the No-Fault Act set forth in *Antanovich* is equally pertinent to this case and controls our disposition of all arguments based on statutory grounds: The Pennsylvania No-Fault Motor Vehicle Insurance Act does not require that no-fault basic loss benefits be stacked.

Aside from statutory grounds, appellee does argue that, based upon a reading of the pertinent provisions of the policies, stacking should be permitted in this case as a matter of contract. She claims that the policies are ambiguous because they can be interpreted "to prohibit an excess recovery over and above the amount of loss actually sustained. The endorsement obviously does not contemplate the situation where a loss may exceed the limits of the benefits available." Brief for Appellee at 11. We disagree.

In the trial court, the parties stipulated that the policies issued by the insurers were in all material respects identical and a true and correct copy of the policy issued by Fireman's Fund was submitted to the court. It was therefore admitted that each insurer had obligated itself to provide only the minimum coverage required by the No-Fault Act. *See* 40 P.S. §§ 1009.103 ("Allowable expense"), 1009.111(b), and 1009.202. The parties have also stipulated that the Personal Injury Protection (PIP) endorsement attached to each policy contained the following provisions:

LIMITS OF LIABILITY: Regardless of the number of persons insured, policies or plans of self-insurance applicable, claims made or insured motor vehicles to which this coverage applies, the Company's liability for personal injury protection benefits with respect to bodily injury to any one eligible person in any one motor vehicle accident is limited as follows:

(1) the maximum amount payable for work loss shall not exceed $15,000, ...; ...;

(3) the maximum amount payable for funeral expenses shall not exceed $1,500;

(4) the maximum amount payable for survivor's loss shall not exceed $5,000.

\*　　\*　　\*　　\*　　\*　　\*

CONDITIONS: H. Non-Duplication of Benefits; Other Insurance.

No eligible person shall recover duplicate benefits for the same elements of loss under this or any other similar automobile insurance including self-insurance. If the eligible person has such other insurance applicable to the accident, the maximum recovery shall not exceed the amount payable under the insurance or self-insurance providing the highest dollar limit.

In no case shall the Company be liable for a greater proportion of any loss than this policy's limit bears to the sum of all limits of liability of all applicable insurance and self-insurance.

Repro. Rec. at 45a, 46a.

Contrary to appellee's assertion, these provisions are not ambiguous. Rather, when read together, they quite clearly limit a claimant to a single no-fault recovery.

■ The Limits of Liability clause is identical to the one upheld by this court in *Antanovich*, 320 Pa.Super. at 326, 467 A.2d at 346. This clause not only puts a ceiling on the company's liability, but also sets forth the specific categories of loss for which benefits will be paid out. Moreover, the first two sentences of Condition H state that no claim-

ant shall be permitted to obtain two recoveries for any single category of loss set forth in the Limits of Liability clause. If more than one source of basic loss benefits is available to a claimant under these policies, all sources are to be applied in reaching the ceilings set forth in the Limits of Liability clause of the policy with the highest dollar limit. The combined maximum recovery permitted under the terms of these policies is limited to a single recovery up to the limits specified in the policy with the highest dollar amount. Therefore, the combined effect of the Limits of Liability clause and the Non-Duplication of Benefits clause is to prohibit the cumulation of no-fault basic loss benefits beyond the level specified in the policy bearing the highest dollar limit. The third sentence of Condition H sets forth a typical policy-limits ratio *pro rata* clause of the type which has been approved by the Commissioner of Insurance, 31 Pa.Code $66.102(e), and upheld by this court in *Fireman's Fund Insurance Co. v. Nationwide Mutual Insurance Co.*, 317 Pa.Super. 497, 464 A.2d 431 (1983). Such a clause is consistent with 40 P.S. § 1009.204(b) [1] as to the manner in which contribution is to be made among insurers. In sum, these policies prohibit the stacking of benefits and provide for the apportionment of the responsibility for paying benefits as required by the No-Fault Act. The construction placed upon these policies by appellee is strained and reads into them an ambiguity which is not there. For these reasons, we conclude that the policies before us validly bar the stacking of no-fault benefits and should have been enforced.

1.  Section 204(b) states, in pertinent part:

    (b) Multiple sources of equal property.—If two or more obligations to pay basic loss benefits apply equally to an injury under the priorities set forth in subsection (a) of this section, the obligor against whom a claim is asserted first shall process and pay the claim as if wholly responsible. Such obligor is thereafter entitled to recover contribution pro rata from any other such obligor for the basic loss benefits paid and for the costs of processing the claim.

    This provision inferentially supports the conclusion that a no-fault claimant may rightfully present his or her claim to only one insurer and obtain only a single recovery.

■ The second issue presented in this appeal is whether the post-mortem work loss benefits are payable in a lump sum or as economic loss accrues. The court in *Antanovich* was confronted with the same issue and concluded that such benefits are to be paid in a lump sum. *Id.* 320 Pa.Super.at 324, 467 A.2d at 346. The trial court therefore properly required the insurers in this case to pay such benefits in a lump sum.

Insofar as the trial court permitted the stacking of no-fault benefits, the judgment of the trial court is reversed. Insofar as the trial court required the insurers to make a lump-sum payment of post-mortem work loss benefits, the judgment of the trial court is affirmed. Because of our holdings on these issues, it is inappropriate for us to now consider the propriety of that part of the judgment requiring the payment of interest and attorneys' fees. Those parts of the judgment of the trial court requiring the payment of interest and attorneys' fees are vacated and the trial court is instructed to reconsider its award in light of this opinion. This case is remanded to the trial court for proceedings not inconsistent with this opinion.

Jurisdiction is not retained.