# In re Petition for Redistricting Voting Districts of Ross Township

C.P. of Allegheny County, no. GD87-21023.

*Robert L. Byer,* for Ross Township Republican Committee.

*Allan J. Opsitnick,* for Allegheny County Law Department.

CAPPY, *A.J.,* February 22, 1988 — This case is presently on appeal to the Commonwealth Court of Pennsylvania from this court's order of January 6, 1988, establishing voting districts for Ross Township, Allegheny County, Pennsylvania.

The matter originally came before this court on December 7, 1987, when the Allegheny County Department of Elections filed a petition for redistricting the voting districts of Ross Township, pursuant to the Election Code; as amended June 1, 1976, P.L. 523 §1, effective immediately: As affected April 28, 1978, P.L. 202 §2(a) [1193], effective June 27, 1978; July 11, 1980, P.L. 600 §2,

effective immediately; February 19, 1986, P.L. 29 §2, effective immediately (hereinafter referred to as 25 Pa.C.S. §2702.) Objections to the petition for redistricting were filed on December 28, 1987, by the Ross Township Republican Committee, an unincorporated association by its chairman, Robert B. Williams, trustee ad litem, and Robert B. Williams and Dorothy M. Williams, individuals. A hearing was held to address the objections to the petition on December 29, 1987. At the hearing the parties agreed to hear additional objections by Mr. George Jones, a member of the Republican Committee. Mr. Jones' objections were resolved at the hearing by the mutual agreement of all parties. The petition for redistricting was approved by the court in an order dated January 6, 1988. This appeal followed.

The petition which this court approved increased the number of election districts within Ross Township from 23 to 36. The number of voters per district breaks down as follows:

| Districts | Voters |
| --- | --- |
| 3 | 700-750 |
| 4 | 650-700 |
| 5 | 600-650 |
| 8 | 550-600 |
| 12 | 500-550 |
| 2 | 450-500 |
| 2 | 400-450 |

(See court's order as filed January 6, 1988.)

The objections to the redistricting plan as approved are:

(1) The act 25 Pa.C.S. §2702, states "Election districts so formed shall contain between 600 and 800 registered electors as nearly as may be"; the majority of the districts created by this plan contain less than 600 registered electors;

(2) The voting registration figures utilized in devising this plan are stale; and

(3) The increase in the number of districts as created by this plan will cause severe hardships to the minority political party and unduly increase the costs of running the election.

We shall address the issues in the order set forth above.

The section of the Election Code to which the objectors refer is set forth here in its entirety:

*"Court to create new election districts—*

"Subject to the provisions of section 501 of this act, the court of common pleas of the county in which the same are located, may form or create new election districts by dividing or redividing any borough, township, ward or election district into two or more election districts of compact and contiguous territory, having boundaries with clearly visible physical features and wholly contained within any larger district from which any federal, state, county, municipal, or school district officers are elected, or alter the bounds of any election district, or form an election district out of two or more adjacent districts or parts of districts, or consolidate adjoining election districts or form an election district out of two or more adjacent wards, so as to suit the convenience of the electors and to promote the public interests. Election districts so formed shall contain between 600 and 800 registered electors as nearly as may be. No election district shall be formed that shall contain less than 100 registered electors. When a school district crosses county lines, the regions of the school district shall be composed of contiguous election districts."

The objectors argue that the minimum and maximum figures of 600 to 800 voters per district as stated in the act are mandatory numbers. The petitioner and this court do not agree. In reaching

their conclusion that the act is mandatory the objectors ignore the rules of statutory construction. An act must be read in its entirety and with the assumption that the legislature intended every word to be given effect. *Commonwealth v. Lobiondo,* 501 Pa. 599, 462 A.2d 662 (1983). In this particular statute the sentence relied upon by the objectors is followed by this sentence: "No election district shall be formed that shall contain less than 100 registered electors." If the legislature intended the 600 to 800 numbers to be mandatory they would not have phrased the sentence using the words "shall" and "as nearly as may be" and then followed that sentence with a clearly mandatory sentence prohibiting districts of less than 100 voters. The sentence preceding the one containing the 600 to 800 figures, states that the guideline to be used in drawing the districts is the "convenience of the electors and to promote the public interests." When constructing a statute the court must ascertain and give effect to the intent of the legislature. *Firemen's Fund Insurance Co. v. Nationwide Mutual Insurance Co.,* 317 Pa. Super. 497, 464 A.2d 431 (1983); 1 Pa.C.S. §1921.

In this particular case the number of voting districts created, and the number of electors within each district were particularly designed to effectuate the purpose of the statute, to make the voting districts convenient for the voters and thus encourage greater voter participation. The focus upon the figures of 600 to 800 electors per district is misplaced. Those figures, if read within the context of the section as a whole, and keeping in mind the purpose of the statute, clearly show that the legislature meant those numbers as a guideline. The creation of the 36 districts within Ross Township

each containing between 400 and 700 electors is not in derivation of the statute.

The second objection to this redistricting plan deals with the voter registration figures used by the election department in drawing the plan. The figures used are from the 1986 election, and the objectors argue that the 1987 election figures should have been used as they are more recent, thus more reliable. The court rejected this argument. Testimony by the Director of the Department of Elections established that voter registration within Allegheny County follows a clear, predictable cycle. The pattern of voting in this county, as consistent with most of the state, is that the highest number of voters turn out for presidential elections, with a decrease for the municipal elections the following year; a slight increase in the third year for the gubernatorial election; and then a greater decrease in the next municipal election; and then a significant increase in the presidential election. Based on that cycle a decision was made to utilize the 1986 voter registration figures as a median in drawing the voting districts, as those figures relate to the gubernatorial election year. The argument that these figures are stale is misleading. The figures used are consistent with a pattern of voting that has been evident for a considerable amount of years. The Election Department's decision to utilize the 1986 registration figures was a valid one considering the cyclical nature of voter turnout and the fact that the new districts will be quickly inflated as we are now in a presidential election year.

The final arguments raised as to inconvenience and cost are simply not supported by the record. The inconvenience complained of by the Republican Party Chairman for Ross Township is that the Republican Party, which only accounts for 40 percent

of the registered voters in the township, "may" not be able to adequately staff the additional polling places. Should Mr. Williams' assumption that not enough volunteers would be available become a reality, the Department of Elections, as required by law, would supply sufficient staff to operate the polling places. The question of costs was analyzed by the Allegheny County Commissioners and found not to be a factor in the Ross Township redistricting plan.

The objections to the redistricting plan for Ross Township are not significant, and the plan as approved clearly meets the statutory guidelines, in that it effectuates the primary purpose of the legislature. More polling places with fewer voters creates greater convenience for the public and encourages a higher degree of civic involvement.

For the reasons of fact and law stated above the petition for redistricting was approved per the order of January 6, 1988.