## Heymann v. Electric Service Manufacturing Company, Appellant.

Argued April 22, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Francis E. Shields,* with him *Pepper, Hamilton & Scheetz,* for appellant.

*Robert L. Trescher,* with him *S. Jonathan Emerson,* and *Montgomery, McCracken, Walker & Rhoads,* for appellees.

340

OPINION BY MR. JUSTICE BENJAMIN R. JONES, October 11, 1963:

This assumpsit action was instituted in the Court of Common Pleas No. 5 of Philadelphia County by Heymann and Brother (Heymann), real estate brokers, and Production Sales, Inc. (Production Sales), business brokers, for the recovery of a brokers' commission allegedly due from Electric Service Manufacturing Company, Inc. (Seller), on the ground that the actions of Heymann and Production Sales constituted the efficient cause of the production of H. K. Porter Company (Porter) as the purchaser of all the capital stock of the Seller. After a trial, the jury rendered a verdict in favor of Heymann and Production Sales and against the Seller in the amount of $39,450 which sum represented a 5% commission upon $600,000 plus interest to the date of the verdict. Seller's motions for judgment n.o.v. and a new trial were refused and judgment was entered on the verdict. From the entry of that judgment this appeal was taken.

On or about November 16, 1954, Seller's board of directors authorized its operating committee to negotiate the sale of one of its several operating plants known as "Plant B" for the price of $600,000. To that end, a brochure and a tabulation of factual data concerning "Plant B" was prepared and "Plant B" was advertised for sale. Initially, the Seller on its own directly contacted prospective customers and it was not until the Spring of 1955 that the Seller sought the aid of various sales organizations.

Sometime prior to May 31, 1955, the Seller authorized one Donald Rogers to find a purchaser for "Plant B" on a non-exclusive basis for $600,000. Sometime prior to November 8, 1955, Rogers became associated with Heymann and sometime thereafter, at Heymann's request, Production Sales entered into the matter as a co-broker. A representative of Production Sales con-

tacted Porter with respect to the purchase by Porter of "Plant B" and data relating to "Plant B" and its operation, as well as some other facets of Seller's operations, was made available to Porter. It seems clear on the record that this constituted the *first contact* between Porter and the Seller.

On January 5, 1956, Rogers advised a member of the Seller's operating committee that Heymann had arranged for an inspection of "Plant B" by a representative of Porter and, at that time, the Seller instructed Heymann that its authority to sell was limited to "Plant B", such limitation of authority being the subject of a writing initialled by the Seller on January 6, 1956. Several other meetings took place between representatives of the brokers and Porter.

Some months later all the stock of the Seller was sold to Porter and on the basis of such sale the claim for a broker's commission was made.

At the outset, we must determine from the pleadings the issues between the parties to this litigation. Paragraph 9 of the complaint sets forth the basis upon which the brokers seek the payment of a commission. In substance, that paragraph alleges that the Seller, finding that no sale of "Plant B" as a separate unit could be made for the price set by the Seller, fixed a date for a meeting of its officers and directors at which the brokers were requested to be present; that in the "early part of May, 1956, 3 p.m.," seven directors or officers of the Seller—who constituted a majority of Seller's stockholders—met with one Whitney Goit, a representative of the brokers; that at this meeting the Seller "decided to sell all of its property and assets as a going concern and authorized [Goit] to offer all its assets as a going concern for sale at $3,-000,000"; that Goit communicated this authorization to Heymann and Production Sales and, pursuant to such authorization, they proceeded to interview a num-

ber of new prospects as well as former prospects, including Porter, who had manifested an interest in the purchase in its entirety of Seller's business.

The complaint then averred that the Seller did sell all its properties and assets as a going concern to Porter for $3,000,000; that the Seller, in lieu of cash, accepted the exchange of all its stock for Porter stock; that said exchange of stock and transfer of possession took place by July 27, 1956; that Heymann and Production Sales demanded commissions on the sale but the Seller replied that no commissions were due because there had been no sale but an exchange of stock. In their complaint, the brokers claimed "the sum of $150,000 with interest thereon from July 27, 1956" which sum represented a 5% commission on the total averred sales price of $3,000,000.

In its answer, the Seller admits that a meeting was held in the "early part of May, 1956" but avers that this meeting was not called by the Seller but at the request of Goit for the purpose of permitting Goit to discuss the possibility of a merger between the Seller and some unnamed company or companies or the acquisition by the Seller of the assets of some such company. The Seller denied that at that meeting it decided to sell all of its properties and assets or that it authorized Goit to offer its assets and properties for sale for $3,000,000 or any other price; that the Seller continued to own all its properties and assets until the Seller was dissolved on November 8, 1956; that Seller denied that it exchanged its stock or sold its properties and assets for $3,000,000. The Seller took the position that, while it had authorized the brokers to sell "Plant B" for $600,000, the brokers had not effected such a sale and, therefore, no commissions were due them.

At the trial, it was established that the stock of Seller had been actually sold for $1,550,391 and Hey-

mann and Production Sales then claimed $77,519.55, or a 5% commission on the actual sale price of the stock, $1,550,391, with interest.

From the pleadings, the issues drawn between the parties are clear: (a) whether the Seller had authorized the brokers to sell all Seller's properties and assets as a going concern for $3,000,000? (b) if the Seller had so authorized the brokers, were the actions of the brokers the efficient producing cause whereby Porter and the Seller were brought together to eventually effectuate the sale of all of its properties and assets by a transfer of Seller's stock?

An examination of the pleadings clearly and unequivocally reveals that the following *were not* issues in this litigation: (a) whether the Seller had authorized the brokers to sell "Plant B" for $600,000? (b) if so, whether the brokers had produced a purchaser ready, willing and able to purchase "Plant B" at that price? In fact, the Seller conceded that it had authorized the brokers to sell "Plant B" for $600,000 and the facts indicate that the brokers did not produce a ready and willing buyer of "Plant B" as a single unit for $600,000. Furthermore, there is not a scintilla of evidence that "Plant B" was eventually sold for $600,-000, either by a direct sale for that price or by way of allocating that value to "Plant B" in arriving at the overall price eventually paid by Porter for the stock of the Seller.

What actually happened was that the parties to this litigation tried the case upon the theory and the issues presented in the pleadings, but the trial court, inadvertently, in its instructions to the jury permitted the jury to pass upon the issues whether the Seller had authorized the brokers to sell "Plant B" for $600,000 and whether, if the brokers had such authority, they produced Porter as the purchaser of the stock who did pay $600,000 for "Plant B" as part of the overall price for the sale of the Seller's stock.

In this respect the Court charged the jury as follows: "Considering the matter of compensation, you must consider the matter of authority, the authority which the agents had based upon the contract. Was it for Plant 'B'? Was it for the entire business? Consequently, counsel for the plaintiff has submitted a calculation which will be given to you because it saves you in the event you so find, it saves you from computing interest and so on, and it is all added, and it has been checked and the figures considered to be accurate. *Then the Court has undertaken to submit an alternative calculation, which would be under the authorization, if any, limited to the sale of Plant 'B' on the basis of the price which the defendant said it wanted of $600,-000, and that is computed as an alternative, and that will be submitted to you.*"

Later, in its instructions, the Court said: "Then I have prepared an alternative one [calculation] which is based upon the price which was requested for the sale of Plant 'B' only. That is just for your consideration . . . should you feel that under the agreements and all what the authority was. It depends upon what the authority was and what was done, and that will depend on what the commission shall be."[1]

Such instructions were erroneous; they introduced into this lawsuit issues foreign to the pleadings, the evidence and the theory upon which the lawsuit was tried.

In its verdict the jury made an award of a 5% commission based on a purchase price of $600,000 by Porter of "Plant B". Such a verdict cannot be permitted to stand. An examination of the pleadings and the record clearly indicates that the claim presented by Heymann and Production Sales was based *solely* on the alleged authorization by the Seller to the brokers

---

[1] Oddly enough, no objection was made to the instructions quoted, supra.

to sell *all* the property and assets of the Seller, not simply "Plant B", and the recovery sought was a commission on the entire sales price for Seller's stock, not the sales price of "Plant B". Furthermore, assuming, arguendo, that the claim of Heymann and Production Sales had been based on the sale of "Plant B" only, there is no proof whatsoever as to the price for which "Plant B" was sold nor any basis for ascertaining such price. To arrive at a conclusion, as the jury did, that, in the overall price for which the Seller sold all its stock, "Plant B" was valued at $600,000, the jury would have had to resort to guess and conjecture that $600,000 was the value placed on "Plant B" since the record reveals nothing of an evidentiary nature to support a finding of such value.

There cannot be the slightest doubt that the jury was misled by the injection into this lawsuit, through the court's instructions, of issues foreign to the pleadings and the evidence and that the jury in its verdict resolved issues which were not before them.

It is hornbook law that instructions given to a jury must be confined to the issues raised in the pleadings and the facts developed by the evidence in support of such issues. As Judge (later President Judge) KELLER said in *Shipp v. Schmitt & Murphy*, 71 Pa. Superior Ct. 496, 499: "This brought to the consideration of the jury an issue not raised by the pleadings or the evidence, and not in the case, and was error". See also: *Parker v. Yellow Cab Co.*, 391 Pa. 566, 137 A. 2d 317; *Fredrick v. Kobaly*, 196 Pa. Superior Ct. 642, 176 A. 2d 152; *Rittenhouse Rubber Co. v. McFadden*, 82 Pa. Superior Ct. 201. Furthermore, where a particular issue is not raised by the pleadings, the fact that evidence on that issue has been received without objection does not authorize an instruction by the court on that issue: *Littman v. Bell Telephone Co.*, 315 Pa. 370, 381, 172 A. 687.

There can be no question that the court erroneously injected improper issues into this litigation and the jury's verdict indicates that it was misled by such error and acted upon these improper issues. Such an error was harmful and prejudicial.

The Seller argues that it is obvious that the brokers' claim for a commission on the sale of the entire business was rejected by that jury, that the verdict was upon a theory which should not have been submitted to the jury, that, in effect, the verdict returned is a verdict for the Seller and, therefore, it is entitled to an entry of judgment n.o.v. With such a contention we disagree.

Both parties to this lawsuit were entitled to have the real issues submitted in clear fashion to the jury without reference to issues foreign and irrelevant; that was not done in this case. Had the instructions been confined solely to the real issues of this litigation we cannot undertake to predict what the verdict of the jury would have been. The unfortunate injection into this lawsuit of irrelevant issues requires that we grant a new trial, not a judgment n.o.v. Manifest justice requires the grant of such new trial under the circumstances herein presented.

In view of our grant of a new trial, it might not be amiss to consider one other of Seller's contentions so that at such new trial the contention need not again be raised. The Seller contends that, since the sale ultimately consummated was by a sale of the stock, rather than the property and assets, of the Seller, no commission would be payable. Such a contention has no merit because as the brief for the brokers well states: "The end result where the stock is sold is exactly the same as where assets are sold. The [Seller's] stockholders ultimately receive cash and the purchaser receives the assets." The rationale of *Connors v. Dempsey*, 303 Pa. 128, 154 A. 296, and *Kahn v. Levy*, 391 Pa.

124, 137 A. 2d 291, negatives Seller's contention in this respect.

Judgment reversed. New trial granted.

———

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I would limit the grant of a new trial to the single undetermined issue, the actual sale price of "Plant B".

At trial, two issues emerged from the pleadings: (1) whether plaintiff-brokers produced the purchaser for all of seller's property and are entitled to commissions on the sale price of all assets (this issue was raised by the complaint), and (2) whether plaintiffs produced the buyer for "Plant B" which sale was consummated when the entire complex was sold (this issue was raised by seller's answer, admitting it authorized the brokers to sell "Plant B" for $600,000, but denied the brokers effected such sale).

The jury's verdict resolved the first issue against the brokers and the second issue in favor of the brokers. However, since no evidence was offered as to the sale price of "Plant B", the jury's award of 5% on $600,000 valuation of "Plant B" is without factual support and may not stand. The new trial, therefore, should be limited to ascertaining what part of the entire sale price represented the sale price of "Plant B".

I see no reason to grant a new trial generally since all other issues were properly submitted to the jury and fairly resolved by them. The seller persuaded the jury that the brokers were not entitled to a commission on the sale of all assets. Therefore, seller should not be required to again defend and re-try this issue simply because plaintiffs failed to offer proof as to the sale

price of "Plant B". Likewise, the brokers' evidence persuaded the jury that they sold "Plant B" and are entitled to commission on its sale price. They should not be required to re-try this issue. The absence of evidence as to the sale price of "Plant B", under the circumstances, does not require that the whole case be tried again. All that need be done is to afford plaintiffs a chance to prove the purchase price of "Plant B".

I dissent from the grant of a new trial which retries issues already properly decided.

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

It is clear from the jury's verdict that the jury found, and its finding was supported by ample and strong evidence, that plaintiffs failed to prove they were entitled to recover on the contract which they pleaded, viz., 5% commissions on the sale price of all the stock. Moreover, it is absolutely clear and absolutely certain that plaintiffs failed even to prove (a) that they ever effected a sale of "Plant B" or (b) the sale price of "Plant B", upon which unproved facts the jury's verdict was based, viz., 5% of the *asking* sales price of "Plant B".

Under these facts and circumstances, I would enter judgment for defendant non obstante veredicto.