500 A.2d 796

FEDERAL KEMPER INSURANCE COMPANY, Appellant,

v.

COMMONWEALTH of Pennsylvania, INSURANCE DEPART-
MENT, and the Insurance Commissioner, Appellees.

Supreme Court of Pennsylvania.

Argued May 16, 1985.
Decided Nov. 12, 1985.

2

Karen M. Balaban, Harrisburg, for appellant.

Hannah Leavitt, Harrisburg, for appellees.

Before NIX, C.J., and LARSEN, McDERMOTT, HUTCHINSON, ZAPPALA, and PAPADAKOS, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.

Federal Kemper Insurance Company appeals by allowance Commonwealth Court's order, 79 Pa.Cmwlth. 345, 469

A.2d 344, affirming a ruling by the Insurance Commissioner. The Commissioner had extended a policy term to provide coverage to one of appellant's insureds for an automobile accident. The Commissioner held the policy covered the accident despite the insured's failure to respond to premium notices until after the policy and its grace period had expired and the accident occurred. The Commissioner held for the insured and ignored appellant's three premium notices because they were not in the precise form required by a regulation prescribing the content of an insurer's notice of either intent to cancel or refusal to renew at the end of a policy term. 31 Pa.Code § 61.5.[1] Appellant contends the regulation has no application here where the cancellation is for nonpayment of premiums. The Commissioner contends that subsection 1(2) of the Act of June 5, 1968, P.L. 140, No. 78, *as amended by* Act of October 5, 1978, P.L. 1060, No. 248, 40 P.S. §§ 1008.1–1008.11,[2] which prohibits refusals to renew at less than twelve-month intervals, requires the notice prescribed by the regulation before coverage under any policy can be terminated by an insurer prior to the policy's anniversary date.

■ Commonwealth Court affirmed the Insurance Commissioner's holding that the insurer was required to issue the formal notice required by regulation under the Act, 31 Pa.Code § 61.5, whenever it wished to end coverage within

1. The notices appellant sent differed from those the Commissioner prescribed in omitting notice of the insured's right to seek review by the Commissioner of cancellation or refusal to renew.

2. Hereafter, as amended, the "Act." The statute before us is described in its caption as "An Act Regulating the writing, cancellation of or refusal to renew policies of automobile insurance; and imposing powers and duties on the Insurance Commissioner therefor." It addresses the three basic ways in which an insurance contract is likely to be terminated: (a) the insurer elects not to renew (refusal to renew), (b) the insurance company stops coverage in the middle of the policy period (cancellation) and (c) the insurer offers to renew but the insured fails to accept the offer. Situations (a), refusal to renew, and (b), cancellation, are governed by Sections 3, 4, 4.1 and 5 of the Act, 40 P.S. §§ 1008.3–1008.5. Section 6 specifically excludes from the Act situation (c) in which the insurer offers to renew or the insured's actions indicate that he wishes the policy to be canceled. 40 P.S. § 1008.6.

the twelve-month policy period during which the statute prohibited it from refusing renewal. On the facts before us, we disagree with this result. Although an insurance company may itself initiate cancellation of coverage under an automobile insurance policy for nonpayment of premium at the end of its nominal six-month term only by using the Commissioner's prescribed notice, cancellation of policy coverage for nonpayment of premium before the anniversary date is nevertheless effective if the insurer can show that the insured knowingly refused to pay a properly charged premium, thus manifesting by overt acts his own intent to cancel the policy. Section 6(2) of the Act, 40 P.S. § 1008.-6(2). An insurer who does not use the prescribed notice must prove that the insured knew his premium was due and refused to pay it. On the stipulations and administrative findings in this record, it is plain the insured had this knowledge. On the facts of this case, the Commissioner's attempt to avoid subsection 6(2) of the Act by reference to another of his regulations, which states that mere nonpayment of premium does not trigger subsection 6(2), effectively deletes the subsection 6(2) exemption from the statute and is inconsistent with the Section 4 express statement permitting cancellation for nonpayment of premium.[3] We therefore reverse Commonwealth Court.

The essential facts are not in dispute. Appellant issued an insurance policy to Ronald Monn on October 13, 1978. Coverage under it expired on April 13, 1979 unless a premium for additional time was paid. On March 20, 1979, appellant sent out a premium notice for coverage during the next six months. The insured did not pay. On April 18, 1979, appellant sent a second notice which stated that payment made on or before April 28, 1979 would result in coverage retroactive to the April 13 expiration date. The insured did not pay. Appellant discontinued coverage at 12:01 A.M. on April 28, but sent the insured a third notice offering to reinstate the policy one day after payment of the premium without retroactive coverage.

3. For citation and discussion of this regulation *see, infra,* at 8–10.

After 12:01 A.M. on April 28, 1979, the insured had an automobile accident. After the accident, he did pay the premium installment. He delivered the money for it directly to his insurance agent on April 30, 1979 and appellant noted a resumption of coverage effective that day, but refused to retroactively cover the April 28 accident. The insured appealed this refusal to the Insurance Commissioner pursuant to Section 8 of the Act, 40 P.S. § 1008.8, and 31 Pa.Code § 61.6. The Commissioner eventually held for the insured and Commonwealth Court affirmed.[4]

On these facts we turn to an analysis of the Act. It deals in two sections with the reasons for which coverage under automobile policies can be terminated. Section 3, 40 P.S. § 1008.3, prohibits cancellation for various discriminatory reasons such as race, religion, marital status, and residence in a particular geographic area. It has no relevance to this case. Section 4, 40 P.S. § 1008.4, which is relevant, restricts the reasons for which an insurer may cancel to nonpayment of premium, suspension of the driver's license or registration of the principal driver, or concealing a material fact. Only the nonpayment provision applies here.

Section 5, 40 P.S. § 1008.5, sets forth generally the required contents of the insurer's notice of "cancellation."[5] Its detail is specified by the Commissioner's regulation. 31 Pa.Code § 61.5 and Appendices A–C to Code Chapter 61. Neither Section 4 nor 5 deals with cancellation by an insured. The second paragraph of Section 6 of the Act, 40 P.S. § 1008.6(2), expressly renders the statute inapplicable to those actions of an insured which the Legislature has specified in subsection 6(2) are sufficient to evidence his intent to cancel.

---

4. The Insurance Department originally advised the insured that he was covered but, after a hearing before one of its examiners, the insurer prevailed. The Department sought and obtained reconsideration. After a new hearing before another examiner, the Commissioner found finally for the insured.

5. The notice referred to in Section 5 is, in reality, a notice of either cancellation or refusal to renew.

Appellant argues that it is entitled to the benefit of both subsection 6(1) and subsection 6(2). Those subsections of the Act read:

Nothing in this act shall apply:

(1) If the insurer has manifested its willingness to renew by issuing or offering to issue a renewal policy, certificate or other evidence of renewal, or has manifested such intention by any other means.

(2) If the named insured has demonstrated by some overt action to the insurer or its agent that he wishes the policy to be cancelled or that he does not wish the policy to be renewed.

40 P.S. § 1008.6(1)–(2).

Appellant argues that its offer to renew the policy for another six months gave it an exemption, under subsection 6(1), from the precise notice requirements of the Commissioner; or, alternately, that it was exempt from those requirements, under subsection 6(2), because the insured's failure to pay premiums manifested his overt intent to cancel. The Insurance Department contends that the statute's definition of "renew" takes cases involving policies with a term of less than twelve months out of the Section 6 exemptions from the statute and its Section 5 notice requirements.

The Act's definition of "renew" is set out in subsection 1(2), which states:

(2) "Renewal" or "to renew" means the issuance and delivery by an insurer of a policy superseding at the end of the policy period a policy previously issued and delivered by the same insurer, such renewal policy to provide types and limits of coverage at least equal to those contained in the policy being superseded, or the issuance and delivery of a certificate or notice extending the term of a policy beyond its policy period or term with types and limits of coverage at least equal to those contained in the policy being extended: *Provided, however, That any policy with a policy period or term of less than twelve months or any period with no fixed expiration date*

*shall for the purpose of this act be considered as if written for successive policy period or terms of twelve months.*

40 P.S. § 1008.1(2) (emphasis added). The Insurance Department agrees with appellant that no notice of cancellation is needed once there is an offer to renew. However, the Department argues that the definitional language of subsection 1(2) implies that "renewal[s]" can only be made after a policy period of twelve months. Under the Department's view, the notice sent out in this case was a nullity as an offer to renew under subsection 6(1) because the statute required the insurer to continue coverage for the offered six-month period and it was also insufficient under that subsection as a notice to cancel because it did not follow the form prescribed by the regulations issued pursuant to Section 5.

This automatic application of the Act's definition of renewal to the facts of this case without reference to subsection 6(2) begs the very question at issue, *viz.* whether the extension of a policy with a nominal term of less than twelve months is a "renewal," despite actions of the insured which are inconsistent with its continuance. If an insured does not wish to continue the policy, he is always free to do so. He can cancel at any time and, indeed, did so here two months after his accident. Likewise, while the insurer cannot refuse to renew a policy within twelve months of its issuance, it can cancel the policy for the reasons given in Section 4, which include nonpayment of premium.

It seems to us consistent with the consumer protection purposes of the statute to impose upon an insurer who wishes to cancel an obligation to advise the insured of its reasons and to permit the Commissioner to specify the contents of the notice to that effect. However, these purposes are not implicated when an insured wishes to cancel. The question then is what objective conduct should be required to manifest the insured's intent to do so. The Legislature has generally described that conduct in subsection 6(2), quoted *supra* at p. 798.

Whether appellant's offer was sufficient as a cancellation notice is, therefore, not controlling if the insured's action in this case comes under subsection 6(2). The Department argues that another of its regulations precludes this analysis. This regulation provides, in relevant part:

(b) Mere nonpayment of the premium by the insured will not be considered such action as to come within the purview of section 6(2) of act of June 5, 1968, (P.L. 140 No. 78) (40 P.S. § 1008.6(2)). Some more affirmative act on the part of the insured shall be necessary, such as a statement by the insured to his agent that he does not want his policy to be renewed or an obtaining by the insured of another policy which he intends shall supersede his current policy.

31 Pa.Code § 61.10(b).

■ An agency's interpretive regulations are binding if in accord with the Legislature's intent. *Pennsylvania Bankers Association v. Secretary of Banking*, 481 Pa. 332, 342, 392 A.2d 1319, 1323–24 (1978); *Masland v. Bachman*, 473 Pa. 280, 296, 374 A.2d 517, 525 (1977). However, the terms of this particular regulation do not cover the present case. The Department's regulation states that "mere" nonpayment is not an overt act within the meaning of subsection 6(2). Mr. Monn's conduct involves more than "mere nonpayment of premiums." The appellant here has shown not "mere" nonpayment but knowing nonpayment. The facts found by the Commissioner, namely, that Mr. Monn knew his policy had expired for nonpayment of premium before his accident, establishes more than "mere" nonpayment.[6] Such a knowing refusal to pay is an overt act. Appellant is therefore not required to cover the April 28th accident, or retroactively reinstate the policy because the insured's refusal to pay the premium due canceled the policy under subsection 6(2) without the necessity of providing the Section 5 notice in the form prescribed by regulation.

**6.** In finding these facts, the Commissioner resolved conflicting evidence against the insured. *See infra* note 7.

In cases where the insurer advances nonpayment as an overt act of refusal, we believe the legislative intent of protecting policyholders and the public against inadvertent loss of coverage or improper cancellation requires imposing on the insurer the burden of showing the Commissioner that the premium was proper, the company demanded it, the insured knew it was due and still refused to pay it. Such a showing would be unnecessary under the statute if the insurer simply mailed the Section 5 notice to its insured in the form the Commissioner has prescribed. When an insurer refuses to give the prescribed notice, it has the burden of proving these facts and the Commissioner's determination of whether it has met that burden will be final, subject to judicial review to determine whether his administrative determination is supported by substantial evidence on the whole record, *Ramey Borough v. Commonwealth of Pennsylvania, Department of Environmental Resources,* 466 Pa. 45, 351 A.2d 613 (1976), and is internally consistent. *Jasper v. Workmen's Compensation Appeal Board,* 498 Pa. 263, 445 A.2d 1212 (1982).

Here, the Commissioner incorrectly ignored the effect of his own finding that this insured knew his six-month premium was due, that it had been demanded, that he still refused to pay and that the insured's denial of these facts was not credible.[7] Instead, the Commissioner adopted a *per se* rule forcing continuation of coverage in all cases unless the notice is given as prescribed. Such a rule has the virtue of simplicity but is accompanied by the vice of requiring insurers to continue free coverage for persons who manipulate the system by refusing to pay premiums they know are due. It imposes an unfair liability not just upon insurance companies but, ultimately, through increased premiums, on

7. Counsel for the insured stipulated in his briefs below that the insured received the March 20 and April 13 notices. Post-Hearing Brief for Insured at 1. While the insured stated that he never received any notices, this is contradicted by a recorded conversation with the insurance company where he stated he received the April notice on April 23, 1979. The Commissioner's determination stated that Mr. Monn's testimony was not credible on this point. Reproduced Record at 151a.

all persons who obey the statutorily imposed duty to purchase insurance coverage for their vehicles.

■ The insured, not the insurer, effected cancellation of this policy by an overt act under subsection 6(2) when he failed to pay a premium he knew was due; and the Commissioner erred in refusing to give effect to that cancellation in reliance on the insurer's failure to give the notice the statute requires when an insurer refuses to renew or desires to cancel.

Knowing nonpayment is not excluded from the statutory term "overt act" and we do not think the Legislature intended to exclude it. The statutory definition of nonpayment of premium envisions cancellation at times other than the twelve-month minimum policy period required by the subsection 1(2) definition of renewal. The statute defines nonpayment of premium:

> "Nonpayment of premium" means failure of the named insured to discharge *when due* any of his obligations in connection with the payment of premiums on a policy, *or any installment of such premium,* whether the premium is payable directly to the insurer or its agent or indirectly under any premium finance plan or extension of credit.

40 P.S. § 1008.1(4) (emphasis added). The interpretation of the regulation set out at 31 Pa.Code § 61.10(b) which the Commissioner urges would eliminate the requirement to pay premiums when due.

On this record Kemper showed that the insured did receive the premium notices, that the premiums themselves were in fact due and they were not paid. *See supra* at 800 and n. 7. We hold continued coverage under such a finding is inconsistent with subsection 6(2) of the Act under which an insured himself can cancel his policy by an overt act evidencing a desire to do so. Knowing refusal to pay a

premium is such an act. The order of Commonwealth Court is reversed.[8]

FLAHERTY and McDERMOTT, JJ., did not participate in the consideration or decision of this case.

NIX, C.J., files a dissenting opinion.

## JUDGMENT

ON CONSIDERATION WHEREOF, it is now hereby ordered and adjudged by this Court that the Order of the Commonwealth Court is reversed.

NIX, Chief Justice, dissenting.

I do not believe that compliance with the cancellation notice required under section 5 of the Act of June 5, 1968, P.L. 140 No. 78, as amended, 40 P.S. § 1008.5, is so onerous upon the insurer that we should create a fictitious distinction between "mere" nonpayment and a "knowing" nonpayment.

I therefore would affirm the action of the Insurance Commission for the reasons set forth in the able opinion of the Commonwealth Court authored by Judge Barbieri.

---

8. Because of our determination on the merits, we need not address appellant's claims of improper procedure within the Insurance Commissioner's hearing process.