530 A.2d 95

**Gilbert S. SOLOMON and LaRue Solomon, his wife**

**v.**

**PRESBYTERIAN UNIVERSITY HOSPITAL, David Wilson, M.D., Stephen Wilson, M.D., David L. Sumney, D.D.S., and James Danner, D.D.S.**

**Appeal of PRESBYTERIAN UNIVERSITY HOSPITAL and David Wilson, M.D.**

Superior Court of Pennsylvania.

Argued Sept. 5, 1986.

Filed Aug. 7, 1987.

Larry A. Silverman, Pittsburgh, for appellants.

Jay H. Feldstein, Pittsburgh, for Solomon, appellees.

Before CAVANAUGH, WIEAND and JOHNSON, JJ.

WIEAND, Judge:

In this medical malpractice action, it was alleged in the complaint that Dr. David Wilson, a medical intern, had been negligent in making an inaccurate diagnosis of symptoms suffered by Gilbert Solomon. This, it was alleged, had been a substantial factor in causing the myocardial infarction which Solomon subsequently suffered. In addition, it was

alleged that Wilson's employer, Presbyterian University Hospital, was vicariously liable for the negligence of its intern. The jury which heard the evidence returned a verdict in favor of the defendants. When the trial court granted a new trial, Dr. Wilson and the hospital appealed.[1]

In the early morning hours of May 30, 1981, Gilbert Solomon awoke from sleep complaining of pain in his jaw. At the suggestion of his wife, Solomon went to the emergency room at Presbyterian University Hospital where he came under the care of Dr. David Wilson. Dr. Wilson, a first year intern at the hospital, was licensed to practice medicine pursuant to a temporary license. The medical history taken from Solomon disclosed an ongoing dental problem. Dr. Wilson performed a physical examination of Solomon's ears, mouth, and jaw. As a result of his examination, Dr. Wilson concluded that the pain experienced by Solomon was related to his dental condition. On the basis of this diagnosis, Dr. Wilson issued three painkilling pills to Solomon and advised him to see his family physician and his dentist. Later on the same afternoon, Solomon was examined by a dentist who confirmed Dr. Wilson's diagnosis. Two days later, Solomon sought a third opinion from a periodontist. The periodontist agreed that the pain in Solomon's jaw had been caused by a dental disease. After leaving the periodontist's office, however, the pain in Solomon's jaw spread to his neck, shoulders and arms. He was immediately taken to the office of Dr. Myron Friedlander, who informed Solomon that he had suffered a myocardial infarction.

The action was tried on the issues raised in the complaint, i.e., that Dr. Wilson had negligently misdiagnosed Solomon's condition and that the hospital was vicariously liable

1. Also named as defendants in the complaint were Dr. David Sumney and Dr. James Danner. Dr. Sumney was dismissed from the case by stipulation of counsel dated April 10, 1985. A verdict was returned for Dr. Danner against Solomon, and Solomon's subsequent motion for a new trial with respect to Dr. Danner was denied by the trial court. Solomon has not appealed from this determination.

because Dr. Wilson had been its employee.[2] The complaint contained no averment that the hospital had been independently negligent because of a failure to supervise Dr. Wilson;[3] and such an issue of independent negligence by the hospital was not at any time raised at trial. After the evidence had been received, Solomon requested that the trial court instruct the jury as follows:

Unless a physician has obtained a Pennsylvania Medical License, he cannot be called a Doctor, cannot diagnose and cannot treat a patient unless he is under the direct supervision, direction or control of a licensed physician. Accordingly, if you find that Dr. Wilson was not under the direct supervision, direction and control of a licensed physician or if you find the licensed physician was not present or immediately available in the emergency room on the morning of May 30, 1981, you may find Dr. Wilson, and the hospital through the agency relationship, negligent per se under Pennsylvania law. 63 P.S. § 421.3.

---

2. LaRue Solomon, the wife of Gilbert Solomon, alleged a derivative claim for loss of consortium.

3. It is suggested by the dissent that the issue of the hospital's independent negligence was raised in paragraph nineteen of the plaintiff's complaint. Nowhere in that paragraph, however, is it alleged that the hospital was independently negligent *for failing to provide proper supervision of Dr. Wilson.* In fact, the only allegations of negligence which are enumerated in that paragraph refer to omissions by Dr. Wilson during his examination and treatment of Mr. Solomon. Reading the inartfully drafted paragraph in its entirety, it is apparent that plaintiffs did not intend to assert the independent negligence of the hospital for failing to supervise Dr. Wilson; rather, they attempted to allege vicarious liability on the part of the hospital arising out of Dr. Wilson's specific acts of negligence. This construction of paragraph nineteen of the complaint finds support in the next succeeding paragraph which alleged:

20. The Defendant Presbyterian University Hospital *in addition to being liable as the master of either David Wilson, M.D. or Stephen Wilson, M.D.* is liable on a theory of ostensible agency.

(emphasis added). When considered in context, the allegations of the complaint do not raise the issue of the hospital's independent negligence for failing properly to supervise its intern, Dr. Wilson. Moreover and in any event, as the author of the dissent appears to concede, the issue of the hospital's independent negligence for failing to provide direct supervision of Dr. Wilson was not raised at trial, and no jury instruction pertaining thereto was requested.

The trial court denied the requested instruction, and the jury returned a verdict in favor of Dr. Wilson and the hospital. Solomon filed a motion for new trial in which he alleged, inter alia, that the trial court had erred by refusing the requested instruction. The trial court agreed and awarded a new trial for the purpose of determining (1) whether Dr. Wilson had violated the provisions of the Medical Practice Act of 1974,[4] which allegedly prohibited an intern from performing health care services without the direct and immediate supervision of a licensed physician; and (2) whether the hospital was *independently* liable for failing to provide necessary supervision for Dr. Wilson. We conclude that the award of a new trial was error; and, therefore, we reverse.

A plaintiff is bound by the theory upon which he submits and tries his case. See: *Kramer v. Pittsburgh Coal Co.*, 341 Pa. 379, 382, 19 A.2d 362, 364 (1941); *In re King's Estate*, 183 Pa.Super. 190, 198, 130 A.2d 245, 249 (1957). He may not, at the post-trial motion stage, raise a new theory which was not raised during trial. See: *Kramer v. Pittsburgh Coal Co., supra; Richardson v. LaBuz*, 81 Pa.Cmwlth. 436, 446 n. 5, 474 A.2d 1181, 1190 n. 5 (1984). In the instant case, Solomon did not allege in his complaint that the hospital had been independently negligent by failing to supervise Dr. Wilson. Moreover, he did not at any time request leave of court to amend his complaint to allege such a theory of recovery. In keeping with the averments of his complaint, the submitted point for charge did not ask that the jury be instructed regarding any possible act of negligence by the hospital. The requested instruction, if granted, would only have told the jury to determine whether the hospital, "through the agency relationship" with Dr. Wilson, was liable for Dr. Wilson's alleged failure to act under appropriate supervision. It was not until after the trial had been concluded and a verdict had been entered in favor of the hospital that Solomon raised for the first time in post-trial motions the issue of the hospital's independent

4. Act of July 20, 1974, P.L. 551, No. 190, § 1, 63 P.S. § 421.1 et seq.

negligence for failure to supervise Dr. Wilson. This was too late. After Solomon had litigated the hospital's liability solely on the theory of respondeat superior, he could not assert post-trial an entirely different theory of recovery against the hospital. He could not, as an afterthought, contend that the hospital had been independently negligent. It was erroneous for the trial court to award a new trial against the hospital on a ground which had not been raised in the complaint or at trial.

The trial court also awarded a new trial to permit the jury to consider whether Dr. Wilson had violated a provision of the Medical Practice Act of 1974 which, according to Solomon, required that Wilson act only under close supervision.[5] Specifically at issue was Section 421.2(6) of the Act, which defined an intern as "[a] physician receiving supervised graduate medical training at an approved hospital or its legal affiliate." 63 P.S. § 421.2(6). Solomon argues, and the trial court agreed, that an intern with a temporary medical license, such as Dr. Wilson, was prohibited from rendering patient services unless he was subject to direct and immediate supervision by a licensed physician. The statutory provision, according to appellee, required that a

5. Like the issue of the hospital's independent liability, the issue of whether there had been a violation of the Medical Practice Act of 1974 was not raised by the Solomons in their complaint. It was presented to the trial court for the first time as a requested point for charge. Ordinarily, jury instructions will be confined to the issues raised in the pleadings and the facts developed by the evidence in support of such issues. See: *Heyman v. Electric Service Manufacturing Co.*, 412 Pa. 338, 345, 194 A.2d 429, 432 (1963); *Hrivnak v. Perrone*, 231 Pa.Super. 151, 154, 331 A.2d 507, 508 (1974), *aff'd*, 472 Pa. 348, 372 A.2d 730 (1977). Where a claim of negligence is predicated upon an alleged violation of statute, the complaint must allege facts which show that the case is within the statute and must disclose the duty of care created thereby. See: *Goldberg v. Friedrich*, 279 Pa. 572, 574, 124 A. 186, 186 (1924); *Godina v. Oswald*, 206 Pa.Super. 51, 55, 211 A.2d 91, 93 (1965); *Sheffit v. Koff*, 175 Pa.Super. 37, 39, 100 A.2d 393, 395 (1953); *Commonwealth, Department of Transportation v. Shipley*, 29 Pa.Cmwlth. 171, 174, 370 A.2d 438, 440 (1977). See also: 65A C.J.S. *Negligence* § 186(8). Appellants have not questioned whether Solomon properly raised the possible application of the Medical Practice Act; and, therefore, we do not address this issue.

physician be present or immediately available whenever an intern examined, diagnosed or treated a patient.

■ Whether and to what extent supervision of interns was required by the Medical Practice Act is an issue with which the appellate courts of this state have not previously been confronted. To resolve the issue, we examine the provisions of the statute and apply rules of statutory construction in order to ascertain the intent of the legislature.

The Medical Practice Act of 1974, as we have observed, defined an intern as "[a] physician receiving supervised graduate medical training at an approved hospital or its legal affiliate." 63 P.S. § 421.2(6). A "physician" was defined as an individual "qualified to seek or [who] ha[d] acquired a license to practice medicine or surgery." *Id.* § 421.1(4). An intern participating in graduate medical training could, for that purpose, acquire a temporary license to practice medicine. *Id.* § 421.4(2). The only restriction imposed upon an intern by such a license, in addition to the fact that it was valid for only twelve consecutive months, was that the medical practice of the intern was limited to the facility in which he or she received graduate medical training. Within that facility, however, the intern was fully qualified to practice medicine and surgery.

No express provision of the Act precluded an intern from practicing medicine unless he or she was under the immediate, physical direction of a licensed physician. If the legislature had intended to subject interns to such close supervision, it could have drafted the Act to reflect this intention. It is not without significance that the legislature chose not to do so.

Elsewhere in the Act, specific supervisory requirements were imposed upon other health care practitioners. For example, Section 421.10(*l*) provided that a physician's assistant could not practice medicine "without the supervision and direction of a licensed physician approved by the appropriate board." 63 P.S. § 421.10(*l*). See also: *Id.* §§ 421.-2(13), 421.3. This provision went on to state, however, that "such supervision and direction [should] not be construed to

necessarily require the personal presence of the supervising physician at the place where the services [were] rendered." *Id.* § 421.10(*l*). Moreover, Section 421.10(m) provided: "This act shall not be construed to prohibit the performance by the physician assistant of any service within his skills, which is delegated by the supervising physician, and which forms a usual component of that physician's scope of practice." *Id.* § 421.10(m). If the legislature had recognized a need to provide for personal supervision of interns, it could easily have satisfied such a need by providing in the Act for restrictions similar to those imposed upon physicians' assistants. In the absence of language restricting the practice of interns, we are constrained to conclude that the legislature deemed intern-physicians fully capable of practicing medicine without direct and immediate supervision by other physicians. It would be truly anomolous to infer, in the absence of language expressly so providing, that the legislature intended licensed intern-physicians, with extensive and sophisticated medical training, to act only under the direct scrutiny of other licensed physicians when physicians' assistants, with less education and training, were permitted by the Act to perform their duties without "the personal presence of the supervising physician." *Id.* § 421.10(*l*). The legislature should not be deemed to intend a result which is absurd or unreasonable. 1 Pa.C.S.A. § 1922(1). See: *Fireman's Fund Insurance Co. v. Nationwide Mutual Insurance Co.,* 317 Pa.Super. 497, 502, 464 A.2d 431, 434 (1983); *Valley Forge Industries, Inc. v. Armand Construction, Inc.,* 38 Pa.Cmwlth. 603, 606, 394 A.2d 677, 678 (1978).

The only reference in the 1974 Act to the supervision of interns appeared in the section which defined an intern or resident as "[a] physician who is receiving *supervised* medical training...." 63 P.S. § 421.2(6). Solomon argues that we should interpret this definitional section to require that interns be under the "direct supervision, direction or control of a licensed physician." Such a requirement did not appear in the language of the statute, however, and we will not rewrite the statute by inserting words which the legisla-

ture itself declined to include. See: *Worley v. Augustine,* 310 Pa.Super. 178, 183, 456 A.2d 558, 561 (1983); *In re Township of Upper Chichester,* 52 Pa.Cmwlth. 121, 125, 415 A.2d 1250, 1252 (1980).

The Medical Practice Act of 1974, *supra,* has been repealed and replaced by the Medical Practice Act of 1985.[6] Although the present action is controlled by the Act of 1974, the interpretation which we, as a court, have placed thereon is consistent with the intent of the legislature which has been expressed specifically in the Act of 1985. Although the new Act eliminated a separate definition of "intern," the definition contained in the earlier statute has been subsumed in other definitional sections of the new Act. Thus, the term "medical doctor," as defined in section 422.2 of the 1985 statute, includes a person who has acquired a graduate license. See: 63 P.S. § 422.2. Moreover, the term "resident," which had been defined coextensively with "intern," is now defined in the new statute as a "medical doctor who is participating in graduate training." *Id.* Although both definitions in the Act of 1985 describe practitioners who hold less than full licenses to practice medicine, the language of the statute conspicuously refrains from imposing any requirement that those with graduate licenses or those receiving graduate training be "supervised." Nowhere in the 1985 Act is there any suggestion that physicians who possess a graduate license, as did Dr. Wilson, are subject to immediate and direct supervision. This is significant because the new Act continues to provide for direct and immediate supervision of *other* practitioners within the health care field. See: 63 P.S. §§ 422.11 (clinical clerks), 422.13 (physician assistants). The legislature has made clear its intent by defining specifically the holder of a graduate license as a medical doctor entitled to practice medicine.

We interpret the Medical Practice Act of 1974 in a similar manner. An intern who possessed a temporary license to

6. Act of December 20, 1985, P.L. 457, No. 112, § 1, 63 P.S. § 422.1 et seq., effective January 1, 1986.

practice medicine was not required by the Act of 1974 to be under the direct and immediate supervision of a licensed physician while performing health care services within a hospital where he or she was receiving graduate medical training. Much of the direct patient care provided by hospitals has been rendered by interns and residents involved in post-graduate training programs. Many of the advances in medicine have been spawned by examinations conducted and observations made by interns and residents. Were we to adopt an interpretation of the Act requiring hospitals to provide personal and direct supervision over each intern or resident practicing in a particular hospital, a result which is not compelled by any specific provision of the Act, we would not only impair the effectiveness of the present system of delivering hospital services, but we would also interfere with the education and training of tomorrow's medical specialists.

In the instant case, Dr. Wilson was not in violation of the Act merely because he diagnosed Solomon's complaint without the presence of a supervising physician. The trial court correctly refused a contrary point for charge submitted by the plaintiffs. Therefore, it was error to grant a new trial to enable another jury to determine whether Dr. Wilson had been negligent per se for diagnosing plaintiff's symptoms without supervision.[7]

The order awarding a new trial is reversed; the verdict of the jury is reinstated; and judgment is entered on the verdict.

JOHNSON, J., files a dissenting opinion.

JOHNSON, Judge, dissenting:

I am obliged to dissent. The majority fails to apply the appropriate standard of review. As a result, the majority concludes the grant of a new trial to be error. This holding

7. In light of our holding, it is unnecessary to consider appellants' remaining argument that Dr. Wilson's alleged violation of the Act was not the "efficient cause" of the injury sustained by Solomon.

by the majority does not recognize the grant of a new trial as a discretionary decision by the trial court.

Our scope of review requires the appellant must be able to show: the trial court palpably and clearly abused its discretion, or committed an error of law which controlled the outcome of the case and is cited by the trial court as the sole reason for granting a new trial, before an appellate court will reverse, *Westinghouse Elevator Company v. Herron*, 514 Pa. 252, 523 A.2d 723 (1987). It is presumed that the trial court is justified in granting a new trial even when the reason given is insufficient, unless it is stated to be the only reason. *Mohr v. Plotkin*, 186 Pa.Super. 615, 142 A.2d 414, (1958). *Ackerman v. Delcomico*, 336 Pa.Super. 569, 486 A.2d 410 (1984). Our inquiry, then, should focus on whether the trial court's decision finds any support in the record. *Westinghouse, supra.* If such support can be found, the trial court must be affirmed, for in that event, the trial court has not abused its discretion. *Id.*

I do not regard the trial court's statement of reasons as a single reason for the grant of a new trial in view of the trial court's statement that:

The plaintiffs contend that these facts also raised issues as to a violation of the Medical Practice Act of 1974, supra and as a corollary the independent negligence of the hospital as to supervision. A thorough examination of the record has convinced the Court that the plaintiffs should have had the benefit of having these two additional issues presented to the jury for determination. The jury should have been requested to determine whether there was a violation of the statute and if so was such negligence a substantial contributing cause of the husband plaintiff's harm either on the basis of any violation of the statute by the intern and/or the hospital as to the supervision requirement. (citation omitted).

Opinion, 2/3/86 at 2.

Therefore our review should be limited to whether a clear and palpable abuse of discretion has occurred. *Westinghouse, supra*, 514 Pa. at 260, 523 A.2d at 727.

The primary duty of a trial judge in charging a jury is to clarify the issues so that the jury comprehends the questions which they are to decide. The instructions must give the jury a reasonable guide for the determination of the alleged negligence required. The jury cannot determine whether a party is guilty of negligence without knowing the degree of care required of that person or entity. *Wood v. Smith*, 343 Pa.Super. 547, 495 A.2d 601 (1985). *See*, also, *Crotty v. Reading Industries*, 237 Pa.Super. 1, 345 A.2d 259 (1975).

In this case, the trial court, in the grant of a new trial, held that the jury should have determined whether there was a violation of the Medical Practice Act of 1974 and if negligence under the act was a substantial contributing cause of the harm to the plaintiff based upon the independent negligence as to supervision by Presbyterian Hospital, or the violation of the statute by the intern, Dr. Wilson. The ultimate question is whether the trial court has acted within the limits of its judicial discretion, when the record adequately supports the trial court's grant of a new trial. *Thompson v. City of Philadelphia*, 507 Pa. 592, 493 A.2d 669 (1985). I find the grant of a new trial to be supported by the record.

The Pennsylvania Legislature enacted the Medical Practice Act of 1974, P.L. 551, No. 190, 63 P.S. § 421.10 *et seq.*, in order to license physicians and thereby protect the public from unlicensed and unqualified practitioners of medicine. *The Legislative Journal-House*, H.B. 760, 2795–2798, (December 4, 1973). Yet, Presbyterian University Hospital argues that no violation of the Act's purpose occurred when Intern David Wilson examined Mr. Solomon, diagnosed his severe jaw pain as periodontal disease, and released him from the Emergency Room—all with no supervision. Mr. Solomon suffered a heart attacked two days later.

Intern Wilson did have a license, but it was a temporary license for a graduate medical trainee (N.T., Vol. II, 6/7/85 at 210). Under the Medical Practice Act of 1974, a temporary trainee license:

... shall be recognized only as conferring upon the licensee the right to *participate*[1] in approved graduate medical training within the complex of the hospital to which he is assigned.

63 P.S. § 421.4. (emphasis added). The Act further limits the practice of medicine by interns by requiring hospitals to supervise said interns. The Act defines an intern as:

A physician who is receiving *supervised*[2] graduate medical training at an approved hospital or its legal affiliate.

63 P.S. § 421.2(6) (emphasis added).

By limiting the type of license accorded an intern and by requiring hospitals to supervise interns, the Medical Practice Act of 1974 controls an intern's practice of medicine. Because interns are not fully licensed physicians, they may not, under the act, present or hold themselves out as such and treat patients as though they have unlimited licenses.

It shall be unlawful for any person in the Commonwealth to engage in the practice of medicine and surgery, or pretend to a knowledge of any branch or branches of medicine and surgery, or to hold himself or herself forth as a practitioner in medicine and surgery, or to assume the title of doctor of medicine and surgery or doctor of any specific disease, ... unless he or she has first fulfilled the requirements of this Act and has received a certificate of licensure or permission from the board, ...

63 P.S. § 421.3. The Act required Intern Wilson to be supervised in order to practice medicine, 63 P.S. § 421.2(6); 49 Pa.Code § 17.15(c). Nonetheless, Intern Wilson treated Mr. Solomon without consulting a fully licensed physician or without having a fully licensed physician present during treatment. (N.T., Vol. II, 6/7/85 at 235–255). In fact, other than the triage nurse, Intern Wilson was the only

---

**1.** Websters Third International Dictionary defines *participate* as: 2. a. to take part in something (as an enterprise or activity) usually with others; b. to have part or share in something. At 1646.

**2.** Websters Third International Dictionary defines *supervise* as: To coordinate, direct, and inspect continuously and at first hand the accomplishment of: oversee with the powers of direction of one's own or another's intentions. At. 2296.

person to examine Mr. Solomon. (N.T., Vol. II, 6/7/85 at 235–255, N.T., Vol. III, 6/7/85 at 295–297.). Intern Wilson's supervisor, the Emergency Room resident on duty, was apparently asleep in another room during Mr. Solomon's examination. (N.T., Vol. II, 6/7/85 at 295–297).

Therefore, a jury might find that: When Intern Wilson acted alone, he presented himself as a fully licensed physician, a clear violation of the Medical Practice Act of 1974, 63 P.S. § 421.3. The jury might also find that Intern Wilson also violated the Act because he treated Mr. Solomon without supervision. 63 P.S. § 421.2(6). 63 P.S. § 421.3. Furthermore, a jury might find that Intern Wilson violated the Pennsylvania Code which states that temporary licenses do not authorize independent practice; they only permit supervised practice.[3]

This *supervised* [4] training experience shall not be converted into an independent staff service by or for any licensed graduate medical trainee.

49 Pa.Code § 17.15(c) (Effective July 21, 1979 through February 16, 1985) (emphasis added).

Both the Pennsylvania Code, 49 Pa.Code § 17.15(c), and the Medical Practice Act of 1974, 63 P.S. § 421.2(6), require hospitals to supervise interns. Neither the Act nor the Code, however, define supervision. Whenever the legislature leaves language undefined, "... effect must be given to the plain meaning of the words used." *Rodenbaugh v. Traction Co.*, 190 Pa. 358, 42 A. 953 (1899), *cited with approval in Commonwealth v. Cohen*, 142 Pa.Super. 199, 15 A.2d 730 (1940). Certainly, supervision can never plainly mean no supervision at all.[5] The record indicates that:

**3.** We note that Administrative Regulations have the effect of law and are binding if in accord with legislative intent. *Federal Insurance Co. v. Commonwealth of PA Insurance Department*, 509 Pa. 1, 500 A.2d 796 (1985).

**4.** Websters Third International Dictionary defines *supervision* as 1:. The act, process or occupation of supervising: direction, inspection and criteria evaluation: oversight. At 2296.

**5.** The Medical Practice Act of 1974 was replaced by the Medical Practice Act of 1985, 63 P.S. § 422 *et seq.*, effective January 1, 1986. The Medical Practice Act of 1985 is silent with regard to supervision.

Intern Wilson examined Mr. Solomon (N.T., Vol. II, 6/7/85 at 235–255); he never consulted the Emergency Room resident (N.T., Vol. II, 6/7/85 at 295–297). He acted with no one other than the triage nurse knowing that he was treating a patient. No one checked Intern Wilson's records to see who he treated and whether the treatment was proper in view of the patient's symptoms. A jury might therefore conclude that had a qualified and fully licensed physician reviewed Intern Wilson's treatment of Mr. Solomon, he or she could have discovered the deficient diagnosis and recalled Mr. Solomon for proper treatment.

Furthermore, a jury might determine that Presbyterian University Hospital violated the Medical Practice Act of 1974, 63 P.S. § 421.2(6) and the Pennsylvania Code, 49 Pa.Code § 17.15(c) when it failed to supervise Intern Wilson. That result would follow if supervision means that the hospital, through its fully licensed physicians, monitors interns' activities and either sees that a fully licensed physician is physically present and guiding the intern, or at the very least, that fully licensed physicians review the records of patients treated by interns within a reasonable period of time.

Presbyterian University Hospital argues that the Medical Practice Act of 1974 and the Pennsylvania Code could not require such direct supervision of interns because such a requirement would severely tax hospital resources. A jury might find this argument to be persuasive.

On the other hand, a jury might reason that the Pennsylvania Legislature enacted the Medical Practice Act of 1974 to protect patients and reach a contrary result. The Act specifically protects patients from unqualified practitioners of medicine. 63 P.S. § 421.3. Interns have temporary licenses because they are not qualified to be fully licensed physicians. 63 P.S. § 421.2(4). Interns are not fully qualified practitioners of medicine and the Act protects patients from unsupervised care. 63 P.S. § 421 *et seq.*

In the case at bar, the jury should have been given an opportunity to decide whether Presbyterian University Hos-

pital adequately supervised Intern Wilson. The jury also should have been instructed that the plain meaning of supervision within the Medical Practice Act of 1974 and Pennsylvania Code requires the direct physical presence of a fully licensed physician who oversees all intern activities or at least reviews the treatment prescribed. The jury also should have been instructed that if it found that Intern Wilson was unsupervised, Presbyterian University Hospital and Dr. Wilson violated the Medical Practice Act of 1974. The jury should also have been instructed that violations of requirements imposed by law have been held to be negligence *per se*. *Miller v. Hurst*, 302 Pa.Super. 235, 448 A.2d 614 (1982).

I also reject the statement by the majority that the hospital was unfairly surprised when the plaintiffs attempted to premise the hospital's independent liability on the negligent supervision of Intern Wilson. Paragraph 19 of the complaint alleges *inter alia;* in pertinent part:

19. Plaintiffs treatment and care by Defendant(s) Presbyterian University Hospital.... was negligent and not in accordance with proper medical skill and care, both generally and in the following particulars:

In failing to exercise a degree in care and treatment required by medical professionals under the circumstances.

The appropriate duty of care a hospital owes to a person seeking emergency room treatment is set forth under § 323 Restatement of Torts 2d:

**§ 323. Negligent Performance of Undertaking to Render Services**

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

*Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280 (1978), *Riddle Memorial Hospital v. Dohan,* 504 Pa.Super. 571, 475 A.2d 1314 (1984). We have determined that:

[T]he changing role of the hospital in society creates a likelihood that patients will look to the institution rather than the individual physician for care.

The conception that the hospital does not undertake to treat the patient, does not undertake to act through its doctors and nurses, but undertakes instead simply to procure them to act upon their own responsibility, no longer reflects the fact. Present-day hospitals, as their manner of operation plainly demonstrates, do far more than furnish facilities for treatment. They regularly employ on a salary basis a large staff of physicians, nurses and interns, as well as administrative and manual workers, and they charge patients for medical care and treatment, collecting for such services, if necessary, by legal action.

*Capan v. Divine Providence Hospital,* 287 Pa.Super. 364, 367, 430 A.2d 647, 649 (1980).

By denying Mr. Solomon's proposed point for charge, the trial judge took away from the jury the issue of negligent supervision and the independent liability of the hospital. This action, as the trial court has determined, was improper because the jury could reasonably conclude that the factors relevant to negligent supervision and negligence *per se* were present.

As Justice Hutchinson concurring in *Thompson, supra,* noted: "When the trial court takes the extraordinary step of granting a new trial, appellate courts in general and Superior Court in particular should defer to the trial court's discretion." 507 Pa. at 597, 493 A.2d at 674.

Accordingly, I would affirm the trial court.