## Carr v. Lumbermens Mutual Casualty Company

*James A. Naddeo,* for plaintiffs.

*Robert Martin,* for Lumbermens Mutual Casualty Company.

REILLY, *P.J.,* September 15, 1988 — Plaintiffs have appealed the entry of summary judgment in favor of the defendant, Lumbermens Mutual Casualty Company.

On March 21, 1980, an automobile operated by Michael Shan Stevens collided with a vehicle operated by Elnora Carr. Plaintiff, Esther Carr, was a passenger in the vehicle operated by her daughter. As a result of this accident, Esther Carr suffered injuries.

Subsequently, Esther Carr and her husband, Leonard Carr, commenced an action against Stevens in this court to recover damages for injuries sustained in the accident. A non-jury trial was held on December 10, 1985, and judgment entered in favor of the Carrs and against Stevens.

As a result, Stevens assigned to the Carrs all rights that he would have against Hartford Accident and Indemnity Company. Plaintiffs brought an action against Hartford and in a separate proceeding, later consolidated for purposes of trial, brought an action against Lumbermens.

Prior to the accident, on January 4, 1980, Stevens applied for automobile insurance coverage with the defendant, Lumbermens, through Sutton Insurance Associates. Sutton issued a binder to Stevens with Lumbermens until the application was approved. If Lumbermens approved Stevens's application, he would be issued a policy.

Stevens received oral notice on January 14, 1980, by Sutton advising him that Lumbermens declined to write the policy. Approximately three days later Stevens received a letter from Sutton advising him that his application for insurance had been refused by Lumbermens due to his driving record. Lumbermens refunded Stevens's money by check, which Stevens received and cashed on January 26, 1980.

Thereafter, Stevens obtained a binder with Hartford Insurance through Sutton, but at no time did he make any premium payments to Lumbermens or Hartford. On March 19, 1980 Stevens purchased an automobile which was subsequently involved in the accident, and submitted a copy of his application of insurance with Lumbermens to the car dealer.

The issue presented before this court is whether

an insurance binder is a "policy" of automobile insurance, and should be treated as such in light of the fact that Stevens admits knowing that he was not covered under an automobile insurance policy; and if so, whether Stevens received proper notice of cancellation as required by statute.

The initial issue then is whether Lumbermens properly canceled the insurance binder by giving notice, although there was no formal notice. In the companion case Stevens admits through his pleadings and deposition that he received oral notice of cancellation, and he cashed a refund check from Lumbermens. Stevens also admits that he had no question in his mind that he had no insurance coverage. Stevens argues that the defendant issued a binding policy of automobile insurance to him through the defendant's agent, Sutton Insurance Associates. In support of this position, Stevens argues that an insurance binder is in fact a policy of automobile insurance subject to the provisions of 40 P.S. §§1008.1-1008.11, and formal standardized notice is required according to 40 P.S. §1008.6(3).

In *Stevens,* this court held that the rejection of the application occurred within 60 days of the binder being issued, and constituted a refusal to write, and although written notice is required, the formal standardized requirements of notice are not necessary. This court reasoned that specific standards of notice are not required in the instant case since an insurance policy was never issued to Stevens nor did Stevens ever believe that he had insurance coverage through Lumbermens.

After this court issued the opinion in *Stevens,* the Pennsylvania Supreme Court held that in order to terminate a policy of automobile insurance, an insurer must comply with Act 78. See *Metropolitan*

*Property and Liability Insurance Company v. Insurance Commissioner of the Commonwealth of Pennsylvania,* 517 Pa. 218, 535 A.2d 588 (1987). In *Metropolitan,* the facts involved two binders issued to the two parties. In reaching the holding, the court stated:

"We agree with appellants that subsection 3 of section 6 was intended to more expeditiously free insurers from obligations which upon closer inspection they would not have incurred; and in that vein the legislature would permit insurers to end coverage without providing a remedy to the customer, and without going through the procedural steps set forth in section 3, 40 P.S. §§1008.5. However, there is nothing in this section which implies that the legislature intended this period to be completely free from control. Indeed the legislative prescription for cancelling a policy, brief though it may be, calls for a direct contrary result.

"Finally, the same policy concerns expressed earlier in this opinion apply during this sixty day period as well: i.e. limiting access to the court; providing an expert and expeditious forum; removing opportunities for unscrupulous insurers to bargain down claims by threats of recision; and encouraging insurers to perform better and more efficient investigations prior to obligating themselves." *Metropolitan, supra.*

The Pennsylvania Supreme Court issued the opinion in *Metropolitan* subsequent to the opinion of *Stevens* by this court. However, this court is of the opinion that *Metropolitan* may be distinguished from the instant case, in that Stevens admits through pleadings and deposition that he had oral notice of cancellation, cashed a refund check from Lumbermens, and admitted that he had no question in his mind that he had no insurance coverage.

Insured, not insurer, effected the cancellation of the automobile policy by an "overt act" within the meaning of 40 P.S. §1008.6(2) when he failed to pay the premium he knew was due, and thus the insurance commissioner erred in refusing to give effect to the cancellation in reliance on the insurer's failure to give notice required by statute when an insurer refuses to renew or desires to cancel. See *Federal Kemper Insurance Company v. Commonwealth of Pennsylvania Insurance Department*, 509 Pa. 1, 500 A.2d 796 (1985). In *Federal Kemper*, the court reasoned that:

"On this record Kemper showed that the insured did receive the premium notices, that the premiums themselves were in fact due and not paid. . . . We hold continued coverage under such a finding is inconsistent with subsection 6(2) of the act under which an insured himself can cancel his policy by an overt act evidencing a desire to do so. Knowing refusal to pay a premium is such an act." *Id.* at 10-11, 500 A.2d at 801.

In *Federal Kemper*, the court's holding was based upon the fact that there was a knowing non-payment. In the instant case, Stevens received and cashed Lumbermens' premium refund check. The refund check was marked "policy cancellation" and Stevens admits that he understood he was not covered by Lumbermens and never expected to receive a policy from them.

It is the opinion of this court that based on the fact that Stevens cashed the refunded check from Lumbermens and admits knowing he had no coverage, standardized formal notice is not required, and the interests of justice and equity required the granting of summary judgment in favor of defendant.